**WALLING, Administrator, Wage and Hour Division, v. LINCOLN LOOSELEAF WAREHOUSE CO.**

**Civ. No. I.**

District Court, E. D. Tennessee,
Winchester Division.

July 30, 1942.

Charles H. Livengood, Jr., and James H. Hynes, both of Nashville, Tenn., and Charles R. Reynolds, Jr., of Washington, D. C., Attys., United States Department of Labor, for plaintiff.

Jos. C. Higgins and B. E. Holman, both of Fayetteville, Tenn., for defendant.

DARR, District Judge.

Upon consideration of the pleadings, stipulation and answer to interrogatories filed herein, the testimony adduced at the trial, the documents introduced as evidence and the entire record in the case, and after hearing arguments of counsel, the court makes and files the findings of fact, conclusions of law and order · for judgment hereafter set out.

### Findings 1, 2, and 3

#### I.

The defendant, Lincoln Looseleaf Tobacco Warehouse Company, is, and at all times since October 24, 1938, the effective date of sections 6, 7, and 11(c) of the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq., hereinafter referred to as the Act, has been a corporation duly organized and existing under and by virtue of the laws of the State of Tennessee, having its principal office, place of business and auction loose leaf warehouse in the City of Fayetteville, Lincoln County, Tennessee, and being there engaged in the business of selling looseleaf tobacco at public auction for the growers and owners thereof, and the defendant was so engaged for the seasons of 1938–1939, 1939–1940 and 1940–1941.

#### II.

During said seasons, which usually began in the early part of December of each year and extended through the middle of January in the following year, looseleaf tobacco was delivered to the defendant at its warehouse by the grower or owner. The tobacco was then graded, placed in baskets, weighed, lined up on the warehouse floor, and sold at public auction for the account of the owner to the highest bidder. The owner of the tobacco was offered the right to reject the bids and if the bids were not rejected, the tobacco was delivered to the purchaser at the warehouse. From the time the tobacco was brought to the warehouse by the owner until it was sold and removed from the warehouse it was handled by defendant's employees, which handling included unloading tobacco from incoming trucks and delivering it to purchasers after sale.

#### III.

During the 1938–1939 tobacco season defendant's employees received, handled and sold 936,693 pounds of tobacco, of which 66,748 pounds were produced, and trucked to defendant's warehouse by out-of-state growers; during the 1939–1940 tobacco season defendant's employees received, handled, and sold 807,392 pounds of tobacco, of which 39,806 pounds were produced, and trucked to defendant's warehouse by out-of-state growers; and during the 1940–1941 tobacco season, defendant's employees received, handled and sold 743,-827 pounds of tobacco, of which 57,928 pounds were produced, and trucked to defendant's warehouse by out-of-state growers. The tobacco received, handled and sold by defendant's employees from out-of-state sources represented approximately 5% to 7½% of the total warehouse volume each season.

The tobacco coming into Lincoln County from out-of-state growers came wholly, with the exception of about 500 pounds, from the County of Madison, a County lying immediately adjacent to and south of Lincoln County, and from a region in which there was no accessible warehouse, and the warehouses in Fayetteville, being the nearest available warehouses. The 500-pound shipment came from Lexington, but this seems to be the only one shown to have come from other territory than that of Madison County, and this delivery was the only one shown to have been received by the defendant.

#### Finding No. IV.

Practically all of the tobacco sold by defendant at auction is purchased by five large tobacco concerns, who transport and ship the great bulk thereof by rail and truck, to destinations in other States, usually within one to three days after purchase.

The title to the tobacco purchased by these large manufacturers was acquired and became complete and the purchase perfected on or near the premises of the defendant, upon acceptance of the tobacco, which was stored on and adjacent to the premises of the defendant, and was thereafter deemed to be the property of the

purchasers, who were under no obligation to ship the tobacco at any specified time.

### Finding No. V.

Employees of the defendant did not perform their work in connection with tobacco all of which came from farms in the general vicinity of the defendant's establishment. The tobacco received by the defendant came from a rather large area and could not be said to be localized or in the general vicinity where its warehouse was located. And such tobacco was not received in the "area of production" as used in Section 13(a) (10) of the Act.

### Finding No. VI.

Growers producing tobacco within an area having an 86 mile radius from defendant's warehouse regularly bring their crops in to be sold on defendant's floor. Defendant receives such tobacco from about 18 counties in Middle Tennessee and several counties in Northern Alabama. Substantial amounts of this tobacco came from sections of Tennessee, such as Columbia, Mt. Pleasant, Carthage, Hartsville and Franklin, which were nearer to competing warehouses than to defendant's warehouse. Defendant's warehouse was operated in a city greatly exceeding 2,500 in population and defendant employed approximately 120 employees each season to handle the tobacco sold by it at auction.

Defendant's warehouse was operated in a town of about 4,600 population and defendant employed approximately 100 to 120 employees.

### Finding No. VII.

The principal function of defendant's warehouse is to lend its agencies for a stipulated fee to the grower or seller of the tobacco for sale to the purchaser, usually manufacturers of tobacco. The defendant does not engage in farming and it raises no tobacco. The warehouse is open to the public and anyone having tobacco for sale can avail himself of its facilities. All of defendant's patrons are not farmers or growers. Speculators account for approximately 5% of the total volume of tobacco sold on the warehouse floor. The employees are hired by the corporation, the patrons of the warehouse having nothing to do with the relations between the company and its employees, and their every duty and function is controlled by the management. The employees are paid by the Corporation; are not assigned to serve any particular grower; and there is no requirement that any applicant for work be a farmer in order to obtain employment with defendant.

### Finding No. VIII.

At numerous times defendant paid its employees wages at rates less than twenty-five cents (25¢) an hour and less than thirty cents (30¢) an hour, during the periods when those respective rates were prescribed as the applicable minimum rates by the provisions of the Fair Labor Standards Act.

### Finding No. IX.

Defendant's business is of a seasonal nature and the partial exemption of the overtime provision of the Act contained in Section 7(b) (3) is available to defendant. However, on numerous occasions defendant's employees did not receive compensation for their employment in excess of 12 hours in any workday or for employment in excess of 56 hours in any workweek, as the case might be, at a rate of not less than one and one-half times the regular rate at which they were employed.

### Finding No. X.

During the period involved in the suit except for some few months prior to the bringing of the suit, on numerous occasions defendant failed to keep accurate record of the hours worked each workday and each workweek by its employees. Frequently it did not credit employees with time when they were required to wait for loads of tobacco to come in or for time when their actual productive work was temporarily interrupted by causes beyond their control. Further, defendant's records fail accurately to show the regular rate of pay and the basis upon which wages were paid, the wages at the regular rate of pay for each workweek and extra wages for each workweek attributable to the excess of the overtime rate over the regular rate of pay.

### Finding No. XI.

Defendant's employees, due to the nature of the business and the irregular flow of tobacco into the warehouse during the less active portions of each season, were not called upon to perform physical duties at all times during the workday. Defendant's failure to observe the requirements of sections 6, 7 and 11(c) of the Act

604

as described above resulted in part from its failure to credit as hours of work all the time its employees were present at the warehouse and under defendant's control, either handling tobacco or awaiting orders. During periods of inactivity in the course of the workday the employees were not free to leave the premises; on the contrary, since more tobacco could be expected at any time, it was to the interest of defendant that sufficient employees be kept at the warehouse in order promptly to take care of tobacco brought in by the grower. During such periods defendant's manager testified that he checked out those employees who were not then needed. However, the manner in which this checking process operated was not clearly shown nor can its use be discovered from defendant's records.

### Finding No. XII.

The Wage and Hour Division of the United States Department of Labor made two inspections of defendant's business during the last two weeks of the 1939–1940 season and one week in the 1940–1941 season and carried on in the meantime lengthy negotiations with defendant's officials and attorneys regarding adjustments of violations of the Act. Defendant contended throughout the negotiations and at the trial of the case that it was not subject to the provisions of the Fair Labor Standards Act, and that its employees were exempt from the requirements of the Act under the specific exemptions in sections 13(a) (2), 13(a) (6), and 13(a) (10), of said Act, but despite this position of the defendant it contended that it had made every reasonable effort to comply with the Act.

### Finding No. XIII.

The directing heads of the defendant corporation are shown to be men of good character and did not wilfully violate the provisions of the Act, but did undertake to comply with the Act from their viewpoint.

### Conclusions of Law.

1. The court has jurisdiction of the parties hereto and of the subject matter of this cause.

2. The tobacco handled by defendant's employees was moving in interstate commerce and both defendant and its said employees were engaged in interstate commerce and both defendant and its said employees were engaged in interstate commerce within the meaning and intent of the Fair Labor Standards Act of 1938.

3. The defendant's warehouse is not a service establishment within the meaning of the exemption contained in section 13(a) (2) of the Act, and the defendant is not exempt from complying with the Fair Labor Standards Act by reason thereof.

4. Neither defendant nor its employees are engaged in agriculture as that term is defined in section 3(f) of said Act and the exemption provided for by section 13(a) (6) thereof is not applicable to defendant or its employees.

5. Defendant's employees are not employed within the "area of production" as that term is used in the exemption provided by section 13(a) (10) of said Act and is not applicable to them in their employment with defendant.

6. By failing to pay its employees, who were engaged in commerce, wages at rates not less than twenty-five cents (25¢) an hour during the period from October 24, 1938, through October 23, 1939, and at rates not less than thirty cents (30¢) an hour thereafter, the defendant has violated sections 6 and 15(a) (2) of the Act.

7. By failing to pay many of its employees, who are engaged in commerce, compensation for their employment in excess of 12 hours in any workday or for their employment in excess of 56 hours in certain workweeks, as the case might be, at a rate not less than one and one-half times the regular rates at which they were employed, defendant has violated sections 7 and 15(a) (2) of the Act. The exemption available to defendant under section 7(b) (3) is inoperative in workweeks when hours are worked in excess of twelve a day or fifty-six a week unless overtime compensation for such excess hours is paid.

8. The defendant has violated sections 11(c) and 15(a) (5) of the Act by its failure to make, keep and preserve records setting forth the information required to be recorded by the regulations promulgated by the Administrator of the Wage and Hour Division pursuant to section 11 of the Act (Code of Federal Regulations, Tit. 29, Ch. V, Part 516).

9. Because of the manner of the violations, the nature of the business, the

character of the directing heads of the corporation and the whole background of the situation as reflected by the proof, there is no reason to anticipate further violations of the Act, and the court exercising the discretion in him vested, rules that the plaintiff is not entitled to the relief for which prayer is made in the complaint herein.

### Directions for the Judgment.

Over an extended period of time, I have given intensive study to the elaborate and exhausted briefs, and addenda thereto, and have read with care the transcribed evidence in an effort to properly comprehend and analyze it.

From all of which it is my opinion that a judgment should be entered in accord with the following conclusions:

(1) The defendant was engaged in interstate commerce at the time of the alleged violations.

(2) The defendant is not exempt from complying with the Fair Labor Standards Act of June 25, 1938, c. 676, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq., by reason of being a service establishment under Sec. 13 (a) (2).

(3) The defendant is not exempt from complying with said Act because its employees are engaged in agriculture under Sec. 13(a) (6).

(4) The defendant is not exempt from complying with said Act because its employees work within the "area of production" under Sec. 13(a) (10).

(5) The defendant has violated the provisions of the statute in manners set out in the complaint, but these violations were not flagrant and were made despite a reasonable effort to comply with the Act. For several months prior to the filing of the complaint there had been a careful compliance with the Act.

(6) Because of the manner of the violations, the nature of the business, the character of the directing heads of the corporation, and the whole background of the situation as reflected by the proof, there is no reason to anticipate further violations of the Act and I should exercise my discretion by declining to grant the injunctive relief sought.

Let a judgment be prepared and filed in accord with this memorandum.

Order accordingly.