**WALLING, Administrator of the Wage and Hour Division, United States Department of Labor, v. McCRACKEN COUNTY PEACH GROWERS ASS'N.**

**No. 140.**

District Court, W. D. Kentucky, at Paducah.

June 15, 1943.

On Plaintiff's Motion to Amend Judgment July 16, 1943.

Irving J. Levy, Acting Sol., of Washington, D. C., Jeter S. Ray, Regional Atty., of Nashville, Tenn., Hugh McCloskey, of

New Orleans, La., James F. Scott, of Lewistown, Ill., and Warner W. Gardner and Roy C. Frank, U. S. Dept. of Labor, both of Washington, D. C., for plaintiff.

Wheeler & Shelbourne, of Paducah, Ky., for defendant.

MILLER, District Judge.

The plaintiff, L. Metcalfe Walling, Administrator of the Wage and Hour Division, United States Department of Labor, brought this action to enjoin the defendant, McCracken County Peach Growers Association, from violating the provisions of Sections 15(a) (1), 15(a) (2) and 15(a) (5) of the Fair Labor Standards Act of 1938, Title 29 U.S.C.A. § 201 et seq. Defendant contends that it is exempt from the operation of the Act by reason of the exemptions conferred by Section 13, subdivisions (a) (6), and (a) (10), Title 29 U.S.C.A. §§ 213(a) (6), 213(a) (10).

The defendant, McCracken County Peach Growers Association, is a Kentucky corporation with its principal office and place of business in Paducah, a city of approximately 33,000 population, in McCracken County, Kentucky, within the jurisdiction of this Court. The defendant is a cooperative association, being organized and receiving the benefits of the Bingham Cooperative Act of Kentucky (Section 883f-1 et seq., Ky.Statutes, Carroll's 1936 Edition). Its membership consists of approximately 25 peach growers in McCracken County, Kentucky, who use the facilities of the organization for the marketing of their peach crops. It conducts its business in a one-story corrugated iron building, approximately 200 x 170 feet in size which was purchased in 1938 at a cost of $5,000. This building contains various types of machinery and equipment used to grade, size and pack seasonal fruits, principally peaches. The equipment was purchased by the defendant in 1930 at a cost of $8,000. Some changes or additions have been made since that. This equipment has been charged down on the books to show a present worth of about $3,000. On the east side of the plant are several large doors through which peaches are unloaded and received. On the west side are three large doors leading to loading platforms from which packed peaches are loaded on railroad cars at an adjoining spur track.

The members of the defendant association bring their peaches by truck from their respective orchards which are located in McCracken County, Kentucky, within a radius of approximately ten miles of the defendant's plant in Paducah. Upon reaching the defendant's plant it is unloaded by the grower, after which employees of the defendant handle the peaches according to the following operations: Receiving tickets are issued to the grower showing the quantity of peaches delivered. The peaches are then poured into grading machines where they first pass through a series of rotary brushes which remove the fuzz. They then pass over a series of open rollers which revolve the fruit so that graders standing on both sides of the machine can pick out the spoiled or deformed peaches. The peaches are then carried by conveyor to machines which consist of several parallel troughs with adjustable sides so that peaches can be graded for size. As each peach passes through a trough it is carried by conveyors to the proper packing table where packers place paper linings inside metal containers which are slightly smaller than a bushel backet. These containers are filled with fruit, after which the metal covering is removed and the paper held fruit is placed in a bushel basket. The filled baskets are then "ringfaced", in that the most attractive peaches are placed on the top so that the top layer of fruit presents the best possible appearance. Lids are placed on the baskets which are then labeled, stamped, and carried to the delivery point. All of the employees engaged in these operations, except receiving, labeling, stamping and checking employees, physically handle the peaches. Other employees who do not physically handle the fruit include clerical and supervisory employees, time keepers, mechanics and watchmen.

At the beginning of each season a sales agent is employed on a commission basis by the board of directors. He arranges to have buyers on hand at the plant at the proper time who are ready to buy the peaches at a fixed price and accept delivery of them at the plant after they have gone through the foregoing operations and have reached the delivery point. The sales agent determines the daily price of the peaches thus offered for sale which he quotes to the assembled buyers at the defendant's plant each morning. Approximately 90% of the peaches are sold to these buyers right at the shed door, who load them into their own trucks or into box cars. The other peaches are shipped to other buyers, many of whom are in states

other than Kentucky. The sales agent receives a two percent commission on the sales so made but does not receive any other compensation from the defendant association. The money thus received for the peaches is used to pay the commission to the sales agent, labor costs, and the other operating expenses of the association, following which the net amount is distributed to the growers on the basis of the average price per bushel. None of the officers of the defendant association receive any salary for their services as such an officer.

The peach packing season in McCracken County, Kentucky, usually lasts about three weeks, beginning some time in June. The exact time of starting depends upon the season and the weather. It is necessary that they be picked and packed promptly when they have ripened to the proper degree, and the season can not be started until this degree of ripening has taken place. As a rule the season starts earlier in territory south of McCracken County and a little later in territory north of McCracken County, with the result that the seasons follow each other fairly closely in moving from the south to the north. It is for this reason that buyers are available in that they move from one territory to another with the opening of the respective seasons.

The employees of the defendant association work during the peach packing season from ten to fifteen hours per day. With few exceptions the male employees were paid 22½ cents per hour and the female employees were paid 17½ cents per hour during the peach packing season involved. The employees are hired by the association through its general manager who is responsible to a board of directors. They are not assigned to serve any particular grower. It is not necessary that an employee be a farmer in order to obtain such employment. A considerable number of the employees live in the City of Paducah within the vicinity of the defendant's plant.

Following the peach packing season, the defendant association has loaned or rented its plant and its equipment therein to apple growers and to sweet potato growers, but these operations have not been operations of the McCracken County Peach Growers Association.

The defendant association had 100 to 125 employees engaged in its work during the peach packing season. It would not be possible for the association to successfully operate with only ten employees or less.

The peach growers in McCracken County, Kentucky, are faced with strong competition from nearby territory in other states, particularly Illinois, where there are large individual growers owning and operating individually the same type of equipment as was owned and operated by the defendant association. The peach growers in McCracken County, Kentucky, being for the most part small growers, could not as individuals successfully compete with this competition. In order to successfully meet this competition it is necessary for them to have the services and advantages furnished by the Association and its equipment and operations.

The defendant association did not keep records of the persons employed by it as prescribed by regulations of the Administrator.

Section 6 of the Fair Labor Standards Act of 1938 provides that every employer shall pay to each of his employees who is engaged in the production of goods for commerce wages at not less than 25 cents an hour during the first year from the effective date of the section and at not less than 30 cents an hour during the next six years from such date. The effective date of the Section was October 25, 1938. Section 206, Title 29 U.S.C.A.

Section 7 of the Fair Labor Standards Act of 1938 limits the number of hours of employment of employees subject to the provisions of the Act, but excepts from its application the case of an employer engaged in the packing of perishable or seasonal fresh fruits or vegetables during a period of not more than 14 work weeks in the aggregate in any calendar year. Section 207, Title 29 U.S.C.A. The operations of the defendant fall within this exception, and accordingly the maximum hour provisions of Section 7 of the Act are not applicable to the defendant.

Section 11(c) of the Fair Labor Standards Act of 1938 provides that every employer subject to the provisions of Section 6 shall make, keep and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him as shall be prescribed by regulations of the Administrator made pursuant to the provisions of the Act. Section 211(c), Title 29 U.S.C.A.

Section 15(a) (1) of the Fair Labor Standards Act of 1938 makes it unlawful for any person to transport any goods in the production of which any employee was employed in violation of Section 6 of the Act, dealing with minimum wages. Section 15(a) (2) of the Act makes it unlawful for any person to violate any of the provisions of Section 6 of the Act, dealing with minimum wages. Section 15 (a) (5) of the Act makes it unlawful for any person to violate any of the provisions of Section 11(c) of the Act which requires the keeping of records of persons employed. Sections 215(a) (1), 215(a) (2), and 215(a) (5), Title 29 U.S.C.A. The present action seeks to enjoin the defendant from violating these provisions of the Act.

Section 13 of the Fair Labor Standards Act of 1938 provides that the provisions of Section 6 shall not apply in certain enumerated cases, two of which are as follows, namely: To "any employee employed in agriculture" (Section 13(a) (6), or "to any individual employed within the area of production (as defined by the Administrator), engaged in * * * packing * * * agricultural or horticultural commodities for market." Section 13(a) (10). The defendant claims that its operations are exempted from the provisions of Section 6 of the Act by reason of these two subdivisions of this Section.

■ The defendant association and its employees are engaged in the production of goods for commerce and are subject to the provisions of Section 6 of the Act unless they are exempted by the provisions of Sections 13(a) (6) or 13(a) (10) of the Act.

■ The employees of the defendant association are not employees in agriculture within the provisions of Section 13(a) (6) of the Act. Section 3(f) of the Act defines the term "agriculture" as follows: "'Agriculture' includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities * * * performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market."

The defendant association is a corporation; it is not a farmer; its employees are not all farmers. Its operations are not performed on a farm. Bowie v. Gonzalez, 1 Cir., 117 F.2d 11, 18.

The Administrator's definition of "area of production" which is referred to in Section 13(a) (10) of the Act is given in Title 29, Chapter V, Code of Federal Regulations, Part 536. Under Section 536.2 it is provided: "An individual shall be regarded as employed in the 'area of production' within the meaning of Section 13(a) (10) * * * * (a) If he performs those operations on materials all of which come from farms in the general vicinity of the establishment where he is employed and the number of employees engaged in those operations in that establishment does not exceed ten." These regulations were released in December, 1941. Prior to June 15, 1939, the Administrator's definition was as follows: "(a) if he performs those operations on materials all of which come from farms in the general vicinity of the establishment where he is employed and the number of employees engaged in those operations in that establishment does not exceed seven." This definition was amended on June 15, 1939, so as to add an alternative definition reading as follows: "Or * * * *(d) if he performs those operations on materials all of which come from farms in the immediate locality of the establishment where he is employed and the establishment is located in the open country or in a rural community. As used in this subsection (d), 'immediate locality' shall not include any distance of more than ten miles and 'open country' or 'rural community' shall not include any city or town of 2500 or greater population according to the 15th United States Census, 1930".

Section 536.2 of Part 536 of the Code of Regulations contains a provision for a petition for amendment of the definition by any interested person or association directed to the Administrator, setting forth the changes desired and the reasons for opposing them, and providing for an opportunity for interested parties to be heard if the Administrator believes that reasonable cause exists for the amendment to the regulations as set forth. The secretary of the defendant association did not know of the definition until he was advised by a representative of the plaintiff of the

Administrator's definition of the area of production. It was not satisfactory to him and he wrote the office of the Administrator at St. Louis. Receiving no reply, he wrote the office of the Administrator at Washington. He received no letter in reply but about three months later received a bulletin. In the meantime, he complained to both of the United States Senators from Kentucky. He did not file a written objection with the Administrator of the Wage and Hour Division because of his failure to receive an answer to the two letters previously written.

It is well settled that when Congress delegates administrative power to an administrative board the proper exercise of the delegated power lies within the administrative discretion of the public officer to whom it is delegated, and where the regulation of an administrative body is within the scope of the authority legally delegated the presumption of the existence of facts justifying its specific exercise arises. Pacific States Box & Basket Co. v. White, 296 U.S. 176, 185, 186, 56 S.Ct. 159, 80 L.Ed. 138, 101 A.L.R. 853; Currin v. Wallace, 306 U.S. 1, 17 and 18, 59 S.Ct. 379, 83 L.Ed. 441; United States v. Rock Royal Cooperative, Inc., 307 U.S. 533, 567 through 568, 59 S.Ct. 993, 83 L.Ed. 1446. In order for such delegated power to be properly exercised Congress must not only delegate the power, but should also establish primary standards, devolving upon others the duty to carry out the declared legislative policy, or as it has been expressed "to fill up the details" under the general provisions made by the legislature. Such regulations of the administrative body become binding rules of conduct, but they are valid only as subordinate rules and when found to be within the frame work of the policy which the legislature has sufficiently defined. There are limits of delegation which there is no constitutional authority to transcend. When there is no rational connection between the declared policy of Congress and the regulation of the administrative body the regulation can be declared invalid by the Court. Panama Refining Co. v. Ryan, 293 U.S. 388, 426–430, 55 S.Ct. 241, 79 L.Ed. 446. The Administrator of the Wage and Hour Division has exceeded the authority delegated to him by Congress in including in his definition of the area of production that the number of employees employed by the establishment must not exceed ten. "Area of production" deals primarily with geographical territory and necessarily includes all employers within the geographical limits so set up. The Administrator exercised his authority unreasonably in restricting the exemption merely to those employers where the number of employees did not exceed ten even though such employers were within the geographical limits established by the Administrator. Fleming, Administrator, v. Farmers Peanut Co., 5 Cir., 128 F.2d 404; Clark v. Jacksonville Compress Co., D.C., 45 F.Supp. 43; Galiup v. Terrell Cotton Warehouse Co., D.C.N.D.Tex., May 29, 1941.[1]

It is doubtful if the Court has the authority to strike out the invalid portion of the definition and to apply merely the remainder, as probably the definition must stand or fall as a whole. But if such authority does exist the defendant falls within the remaining valid portion of the Administrator's definition as the peaches in question "come from farms in the general vicinity of the establishment where he is employed." If the definition of area of production is rejected in its entirety it follows that the employees of the defendant are not "employed within the area of production" (as defined by the Administrator)", since there is no existing definition by the Administrator. If under such circumstances the authority exists for the Court to define area of production the Court adopts so much of the Administrator's definition as is not rejected by it as being in excess of the Administrator's authority, making the Court's definition read as follows: "If he performs those operations on materials all of which come from farms in the general vicinity of the establishment where he is employed." The employees of the defendant come within that definition. If the Court does not have the authority to make such a definition for the purposes of this case, in the absence of a valid definition by the Administrator, the Court holds that the Administrator is not entitled to injunctive relief until and unless he establishes a valid definition of the term "area of production" which duty is imposed upon him by the Act itself. He who seeks equity must do equity. Since the Act provides a possible exemption to the defendant, the plaintiff is not entitled to invoke the processes of the equity court

1 No opinion for publication.

without affording the defendant an opportunity to come within the terms of the exemption provided.

Defendant is entitled to judgment in its favor and the complaint will be dismissed.

On Plaintiff's Motion to Amend Judgment.

The Administrator of the Wage and Hour Division brought this action to enjoin the defendant, the McCracken County Peach Growers Association, from violating the provisions of Sections 15(a) (1), 15(a) (2) and 15(a) (5) of the Fair Labor Standards Act of 1938 (U.S.C.A. Title 29, Sections 201 et seq.). Upon the final submission of the case the Court dismissed the action and entered a judgment to that effect which also provided that the "defendant recover of plaintiff its costs herein expended." The plaintiff has moved to amend the judgment by striking that portion pertaining to the recovery of costs by the defendant.

The plaintiff relies upon the well settled rule that the United States as a sovereign power enjoys immunity from suit and from costs incident thereto except where Congress by statute has otherwise provided. United States v. Worley, 281 U.S. 339, 50 S.Ct. 291, 74 L.Ed. 887; United States v. Chemical Foundation, 272 U.S. 1, 20, 47 S.Ct. 1, 71 L.Ed. 131; Treat v. Farmers' Loan & Trust Co., 2 Cir., 185 F. 760, 763. The rule was recently applied by this Court in United States v. 251.81 Acres of Land in Meade County, Ky., et al., D.C., 50 F.Supp. 81, where it refused to adjudge costs against the United States in favor of a landowner who had been successful before a jury in increasing the compensation offered by the Government in the condemnation of his property. It is equally as well settled, however, that the rule does not necessarily apply to actions which involve an officer or agency of the United States rather than the United States itself. It has been many times held that under certain conditions such an officer or agency of the Government is not immune from suit. Ickes v. Fox, 300 U.S. 82, 96, 57 S.Ct. 412, 81 L.Ed. 525; Barr v. Rhodes, D.C.W.D.Ky., 35 F.Supp. 223. The Supreme Court has in recent years materially limited the scope of the rule relied upon where its application was sought in a case involving an agency of the Government. In Keifer & Keifer v. R. F. C., 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784, the Court held that the governmental agency involved was not immune from suit, pointing out that the Government does not become the conduit of its immunity in suits against its agents or instrumentalities merely because they do its work. The opinion stated that the fact that a corporation has been used as such an agency does not in itself confer on such corporation the legal immunity which the Government has even if the conventional sue and be sued clause was omitted; that Congress may endow a governmental corporation with the government's immunity but the question in each case is, has it done so? In F. H. A. v. Burr, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724, the Court in again holding a governmental agency subject to suit said that such waivers by Congress of governmental immunity in the case of a federal instrumentality should be liberally construed, since such a policy is in line with the current disfavor of the doctrine of governmental immunity from suit, as evidenced by the increasing tendency of Congress to waive the immunity where federal governmental corporations are concerned. The question of costs was specifically dealt with by the Court in Reconstruction Finance Corp. v. J. G. Menihan Corp., 312 U.S. 81, 61 S.Ct. 485, 486, 85 L.Ed. 595, wherein the Court specifically stated "immunity in the case of a governmental agency is not presumed." In that opinion the Court pointed out that where an agency is empowered to sue and be sued the authority to do so normally includes the natural and appropriate incidents of legal proceedings which include the payment of costs by the unsuccessful litigant. It adjudged costs against the R. F. C. in that case.

In creating the position of Administrator of the Wage and Hour Division the Fair Labor Standards Act of 1938 authorized the Administrator to seek injunctive relief through the Courts against threatened or existing violations of the Act. Sections 11(a) and 17 of the Act. It also authorized the appointment of attorneys to appear for and represent the Administrator in such litigations. Section 4(b) of the Act. It nowhere confers immunity from suit upon the Administrator. In the present case, as in R. F. C. v. Menihan Corp., supra, the governmental agency instituted the litigation and unsuccessfully prosecuted the same. Since it had congressional authority to do so, which was not coupled with any grant of immunity differentiating it from other litigants, liability for costs is a natural incident of its unsuccessful re-

sult. The situation is very similar to the situation before the Supreme Court in R. F. C. v. Menihan Corp., supra, and the reasoning in that case seems equally applicable here.

The plaintiff's motion to amend the judgment is overruled.