McCOMB, Administrator of Wage and Hour
Division, U. S. Department of Labor, v.
**PUERTO RICO TOBACCO MARKETING
CO–OP. ASS'N.**

No. 5106.

United States District Court
D. Puerto Rico ·
San Juan Division.

Dec. 7, 1948.

Kenneth P. Montgomery, of Santurce,
Puerto Rico, for plaintiff.

E. Martinez Rivera and Luis Blanco Lugo, both of San Juan, Puerto Rico, for defendant.

CHAVEZ, District Judge.

Plaintiff William R. McComb, Administrator of the Wage and Hour Division, United States Department of Labor, brought this action to enjoin defendant, Puerto Rico Tobacco Marketing Cooperative Association, from violating the provisions of Sec. 15(a) (1), 15(a) (2) and 15(a) (5) of the Fair Labor Standards Act of 1938, Title 29 U.S.C.A. § 201 et seq. The defendant denies the alleged violations and contends that by virtue of Secs. 13 (a) (6) and 13(a) (10) Title 29 U.S.C.A. § 213(a) (6) 213 (a) (10), its employees are exempt from the scope of the Act.

The defendant is a farmer's cooperative association which markets tobacco grown by its members. It is incorporated under the laws of Puerto Rico and maintains its principal office in San Juan and operates warehouses and stemmeries for tobacco in nine districts in Puerto Rico. The association has broad general purposes which include: the most effective marketing of tobacco in order to promote the welfare of its members and the prosperity of the tobacco industry, the successful cultivation, harvesting and marketing of tobacco produced both by its own members and by non-members, and the promotion of all activities relating to harvesting and marketing which may benefit its members.

Defendant association is directed by a board of eleven directors which has full authority to act in any appropriate way to promote the ends for which the association was organized.

Active members must market their entire crop of tobacco through the association. Members who fail to do this become inactive members and after three years they can regain active status only by fulfilling the requirements established for new members.

Annually, the defendant has an assembly of all members as well as district assemblies. The members, each of whom has one vote, elect the members of the Board of Directors. Each member is bound by a contract to sell to the Association all of the tobacco produced by him or acquired by him. Furthermore, the terms of this contract are that a sale is made to the defendant and that the association takes absolute title to the tobacco as soon as the tobacco has a potential existence and agrees to resell it. The association is a corporate entity having full and complete power to act without reference, except in yearly elections, to the individuals who are its members.

Each of defendant's plants or warehouses receives tobacco from farmers who are members, sorts, grades, ferments, stems and packs the tobacco for shipment to the United States. It is conceded that the employees are engaged in the production of goods for commerce and are entitled to the minimum wage provided by the Fair Labor Standards Act unless they are exempt by specific provision of law.

There is no question as to the facts, the same being stipulated to by the parties. The Court, however, makes the following additional finding of fact:

The Court finds that the process of fermenting leaf tobacco as described in stipulation of fact No. VI(4) and VI(9) takes from 60 to 120 days and that fermentation produces a chemical change in the tobacco by making it milder and sweeter.

Upon the pleadings and the facts, the issues in this case are as follows:

1. Are defendant's employees engaged in agriculture within the meaning of the Fair Labor Standards Act, and, therefore, exempt from the wage and hour provisions of that Act by virtue of Sec. 13(a) (6) thereof?

2. Are defendant's employees engaged within the area of production in handling, packing, storing, drying or preparing tobacco in its raw or natural state for marketing and therefore exempt from the Wage and Hour Provision of the Act by virtue of Sec. 13(a) (10)?

3. Has defendant violated Sec. 6 of the Fair Labor Standards Act by paying less than the minimum wage of 27¢ per hour to employees entitled to such payment for all hours worked.

4. Has defendant failed to keep records of the hours worked each work day and each work-week by employees in stemming tobacco as required by record-keeping regulations issued pursuant to Sec. 11(c) of the Act.

██ It is well settled that any one asserting that its employees are exempt from the wage and hour provisions of the Act has the burden of showing affirmatively that they come clearly within an exemption provision. Walling v. General Industries Co., 330 U.S. 545, 67 S.Ct. 883, 91 L.Ed. 1088; Mid-Continent Petroleum Corp. v. Keen, 8 Cir., 157 F.2d 310; Armstrong Co. v. Walling, 1 Cir., 161 F.2d 515; McComb v. Hunt Food Inc., 9 Cir., 167 F.2d 905; and the exemption provision is to be narrowly construed, due regard being accorded the plain language of the Act and the intent of Congress. Phillips, Inc., v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095, 15 A.L.R. 876; Fleming v. Hawkeye Pearl Button Co., 8 Cir., 113 F.2d 52, 56; Bowie v. Gonzalez, 1 Cir., 117 F.2d 11; Miller Hatcheries v. Boyer, 8 Cir., 131 F. 2d 283; Helena Glendale Ferry Co. v. Walling, 8 Cir., 132 F.2d 616; Schmidtke v. Conesa, 1 Cir., 141 F.2d 634; Walling v. Bay State Dredging & Contracting Co., 1 Cir., 149 F.2d 346, 161 A.L.R. 825, certiorari denied 326 U.S. 760, 66 S.Ct. 140, 90 L.Ed. 457; Walling v. Consumers Co., 7 Cir., 149 F.2d 626; West Kentucky Coal Co. v. Walling, 6 Cir., 153 F.2d 582; Walling v. Friend, supra, 8 Cir., 156 F.2d 429; McComb v. Hunt Foods, Inc., 9 Cir., 167 F.2d 905.

Sec. 13(a) (6) Title 29 U.S.C.A. § 213 (a) (6) provides:

"(a) the provisions of sections 206 and 207 of this Title shall not apply with respect to * * *; or (6) any employee employed in agriculture."

Sec. 3(f), Title 29 U.S.C.A. § 203(f), provides: " 'Agriculture' includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agriculture or horticultural commodities (including commodities defined as agricultural commodities in section 1141j (g) of Title

12), the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations including preparations for market, delivery to storage or to market or to carriers for transportation to market."

██ Defendant's employees are not engaged in agriculture within the meaning of Sec. 3(f), Title 29 U.S.C.A. § 203(f) and, therefore, are not exempt under the provisions of Sec. 13(a) (6) of the Act. Walling v. McCracken, County Peach Growers Association, D.C.W.D.Ky., 1943, 50 F.Supp. 900; Bowie v. Gonzalez, 1 Cir., 117 F.2d 11, 18; Lenroot v. Hazlehurst Mercantile Co., D.C.S.D.Miss., 59 F.Supp. 595; Walling v. Lincoln Loose Leaf Warehouse, D.C.E.D.Tenn., 59 F.Supp. 601; McComb v. Farmers Reservoir & Irr. Co., 10 Cir., 167 F.2d 911.

This has been the position of the Administrator of the Wage and Hour Division. Interpretative Bulletin No. 10 issued March 31, 1939; and superseded and replaced by General Statement on Farmers Cooperative Associations, effective September 9, 1947.

We come now to the exemption claimed by defendant under Sec. 13 (a) (10), of the Act, Title 29 U.S.C.A. § 213(a) (10) which provides:

"(a) The provisions of sections 206 and 207 of this title shall not apply * * * (10) to any individual employed within the area of production (as defined by the Administrator) engaged in handling, packing, storing, ginning, compressing, pasteurizing, drying, preparing in their raw or natural state * * * ."

The parties have stipulated that the Comerio warehouse and stemmery is a first concentration point (within the meaning of that term as used in the Administrator's definition of area of production with respect to Puerto Rico leaf tobacco) for all tobacco received and worked upon there.

Also plaintiff concedes that defendant's operations are performed within the area of production but denies that certain of de-

956

fendant's employees are engaged in the work which is exempt when so performed.

Stipulation of Fact No. 10 provides:

"Plaintiff, for the purpose of this action only, concedes that within the meaning of the applicable regulations and terms of the law, employees engaged in the receipt of stalk-out-tobacco, in the classification and bulking of such tobacco and in the re-classification, packing, moving and fumigating of such tobacco prior to stemming are exempt from the minimum wage and overtime provisions of the Fair Labor Standards Act, by virtue of Section 13 (a) (10) when they are engaged in the listed occupations in an establishment which is a first concentration point for such tobacco."

Thus we come to the question: are the operations or processes described in the record; that is, the stemming and fermenting of leaf tobacco, properly considered "handling, packing, storing, ginning, compressing, pasteurizing, drying, preparing in their raw or natural state." Plaintiff contends strenuously that the stemming and fermentation of leaf tobacco is not the preparation of an agricultural commodity in its raw or natural state.

Plaintiff points out that stemming changes the nature of the raw tobacco by removing the prominent mid-rib; and that fermenting leaf tobacco is a process which produces chemical changes which makes the tobacco less bitter and more palatable and contends that stemming and fermenting tobacco is different from handling or preparing tobacco in its raw or natural state.

Plaintiff further calls attention to the fact that the legislative history of Sec. 13 (a) (10) substantiates his contention and sets out that "preparing in their raw or natural state", means that the exemption applies only when they deal with commodities in their raw or natural state and does not include processing. In short, that "preparing in their raw or natural state" is limited to operations which do not change the form of the commodity. An instance is given in the case of apples. That is, if cider or apple sauce is made out of them, then the operation is one of processing and not dealing with them in their raw or natural state.

Section 33, Interpretative Bulletin No. 14 entitled "Agriculture—Exemption of Agriculture; and on the Exemptions for Processing Agricultural Commodities—December 1940," provides:

"The operation included in this term may be any of a large number that are performed in connection with many different kinds of agriculture or horticultural commodities. They do not include operations which change the form of the commodity or which are performed after the commodity leaves its raw or natural state.

"The following examples will prove helpful in determining whether particular operations are included in the term:

" * * * (5) Tobacco.—Stripping, i. e., pulling the tobacco leaves from the stalk, tying the tobacco leaves into hands, grading, and sorting are included."

The Court holds that the stemming and fermenting of leaf tobacco are operations which change the form and nature of the tobacco and is a processing operation rather than "handling, packing, storing, ginning, compressing, pasteurizing, drying, preparing in their raw or natural state."

The next question is whether defendant has violated Section 6 of the Fair Labor Standards Act by paying less than the minimum wage.

Stipulation #XII provides as follows:

"Stipulation #XII—Certain employees of the defendant are employed during the same workweeks in work which plaintiff contends to be non-exempt from the minimum wage provisions of the law and in work which plaintiff concedes to be exempt from the minimum wage provisions of the law. Such employees are paid the minimum rate of 27 cents for each hour for the non-exempt work and a minimum rate of 25 cents for each hour for the work which plaintiff concedes is exempt. Examples of this situation are shown in an exhibit attached to this stipulation and marked Exhibit D. Plaintiff contends that the performance of covered work of a kind other than that characterized in the exemption provided in Section 13 (a) (10) defeats the exemption and that the performance of any non-exempt covered work during a given

workweek prevents exemption during the week in which the work is done."

The record in this case shows that some employees worked in operations which are non-exempt and during the same workweek were employed in exempt operations. As to these employees the Court holds that they are entitled to be paid at the rate of 27¢ per hour. Walling v. Peacock Corp., D.C., 58 F.Supp. 880; North Shore Corp. v. Barnett, 5 Cir., 143 F.2d 172; Waialua Agricultural Co. v. Ciraco Maneja, D.C. Hawaii, 77 F. Supp. 480; Weeks v. Postal Tel., Okla. Ct. of Com. Pl. 6 WH cases 1177.

Upon the question of the alleged violations of Secs. 11 (c) and 15 (a) (5), Title 29 U.S.C.A. §§ 211 (c), Sec. 215 (a) (5), stipulation of fact No. 15 provides as follows:

"Defendant pays stemmers at the rate of 54 cents per pesada or bale of tobacco. A pesada is a bale or bundle of tobacco weighing from 5 to 6 pounds. When a stemmer reports in the morning, she finds at her bench two pesadas of tobacco. When this quantity has been stemmed, the worker reports to a timekeeper who gives the worker two more pesadas of tobacco and punches a time card indicating that the worker has been employed for 8 hours that day and has completed four pesadas of tobacco. A sample of this time card is attached to this stipulation and marked "Exhibit E". In actual fact, many of the employees when working on tobacco of superior quality complete four pesadas of tobacco in less than 8 hours of work. The records show that on Friday which is pay day, stemmers often stem less than four pesadas of tobacco. However, they are credited with 2 hours of work for each pesada of tobacco stemmed, though they may perform the work in less time than is recorded. It is conceded that during 1947 at Comerio no stemmer was paid less than the minimum wage required by law and that there is no evidence that work in excess of 40 hours was worked in a workweek."

The Court holds that the record kept by defendant as set out in the above findings of fact does not show the hours actually worked by employees engaged in stemming and, therefore, does not comply with Sec. 211 (c).

Judgment will, therefore, be for the plaintiff enjoining and restraining the defendant, its officers, agents, servants, employees and attorneys and all persons acting or claiming to act in its behalf and interest, from violating the provisions of Sections 15 (a) (1), 15 (a) (2) and 15 (a) (5) of the Act.