## WALLING v. CALIFORNIA CONSERVING CO., Inc.

### Civ. No. 23767–G.

District Court, N. D. California, S. D.
Nov. 15, 1945.

Douglas B. Maggs, Archibald Cox, Dorothy M. Williams and Milton Roberts, all of San Francisco, for plaintiff.

Richard S. Goldman, Clarissa Shortall and A. B. Bianchi, all of San Francisco, Cal., for defendant.

JAMES ALGER FEE, District Judge.

This is an action under the Fair Labor Standards Act of 1938[1] in which the Administrator seeks an injunction restraining defendant from violating the overtime and record keeping provisions of the Act, and from shipping in interstate commerce goods claimed to have been produced in violation of the Act.

The plaintiff has conceded that the records are kept in a legal manner and that no ground for injunctive relief exists on this point and no proof was introduced to show a violation of this portion of the regulations.

In this case, the essential facts are not in dispute. Defendant purchases whole fresh apples of inferior grades and parts of fresh apples consisting of peelings and cores which latter are obtained from other operators who dry the pulp of the apple, an operation admittedly included in first processing. This fresh fruit is deposited in a pit from which it is carried by a conveyor belt to a grinder. No distinction is or can be made between the ground pulp obtained from whole fresh apples, which may be culls, and that obtained from peelings and cores. The ground fresh fruit is carried by another conveyor to a hopper through which it is dropped onto trays. These trays are stacked on carts and by this means the ground fruit is carried over tracks to a press. There the trays are raised by means of hydraulic lifts against a rigid surface. The pulp of the fruit is thus compressed[2] and the juice of the fruit expressed. The juice runs over the trays and through openings into an underground tank from which it is immediately pumped into fermenting tanks. The apple juice is allowed to ferment approximately three days and after that it is pumped into storage tanks. The remainder of the fruit left on the trays is carried on a belt to a grinder. Thereafter, the residue is baked and sacked.

All the ingenuity of able counsel has been exercised by development of collateral and extraneous evidence as to minute details of the process to weave a rationalization which would justify the result sought. However, the doctrine of burden of proof applies not to the interpretation of the statute, but only to the weight of the evidence of fact.

If the plain words of the statute be taken, the defendant is not regulated thereby, at least in extracting the juice of the apples. Another result can be arrived at only by rationalization. The only basis for such rationalization is the beneficent purpose of the statute.

Those who know the facts without the necessity of consulting books upon such subjects, realize the difference between seasonal operations to save perishable orchard products and general manufacturing. The interminable conflict between rural and urban is here reflected. Modern manufacturing has developed a series of conditions upon which the Fair Labor Standards Act has been sustained. But the products of the soil wait for no man. These must be harvested and processed to a point where they may be preserved in short periods of time, without fail, or the farmer or grower will lose all the proceeds of a year of husbandry. If the primary processor, such as the defendant here, is compelled to keep a 40-hour week because the operation is otherwise rendered too expensive and as a result operates on that schedule, a proportion

---

[1] C. 676, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq.

[2] Webster's Dictionary: "to press or squeeze together; to force into a narrower compass; * * *." Under the provisions of 29 U.S.C.A. § 213(a) (10), later referred to, the sections whereby plaintiff seeks to hold defendant do not apply to any one engaged in "compressing" horticultural commodities for market.

of the apple peelings and cores might become a total loss. Such a loss would fall squarely upon the producer.

■ . A great debate has been held upon where the burden of proof lies. The authorities cited do not have much relation to the problem in this case. The ordinary rule is that plaintiff must prove a case by a preponderance of the evidence. This is particularly true where an injunction is sought.

But in this case the facts are not in dispute. The defendant processed fresh whole apples (10 to 22 per cent of the total) and fresh peelings and cores of other apples to extract juice and turn the remainder of the pulp into "pomace" in a seasonal operation which lasted nineteen weeks. The juice so pressed out was used to manufacture vinegar.

This operation falls squarely within the language of the statute which provides that "in the case of an employer engaged in the first processing of * * * perishable or seasonal fresh fruits * * * during a period or periods of not more than fourteen workweeks * * * in any calendar year," the general provisions of the Act "shall not apply."[3]

The juice when prepared for preservation is not perishable fresh fruit. The making of vinegar out of this juice is not a part of the primary processing, as all concede. The drying of the pulp from which the cores and peelings have been removed is a first processing. The cores and peelings will be absolutely lost if the juice is not immediately pressed from them.

■ The sophistry of arguments that a fresh whole apple is not a perishable or seasonal fresh fruit because it is not large enough or is not colored properly, or is of improper shape, to fall within one of the standard grades, is apparent. Another obvious fallacy is the argument that peelings and cores of fresh apples are not "perishable and seasonal fresh fruits" while the remainder of the fruit falls into that classification. The corollary of fallacy is that the coring and peeling which is admittedly only a step in first processing as regards the pulp which was dried, presented a bar to further treatment of other portions of the "perishable and seasonal fresh fruits." It was the obvious intention of this portion of the statute to expedite the handling of agricultural and horticultural crops in their season so that these might not perish and throw loss on the farmers who spent a year in production.

The Congress, therefore, did not apply the terms of the statute to such operations.[4] The policy of protection to the growers of "perishable and seasonal fresh fruits" is of as much force as that of the protection of general industrial workers. The objective of a uniform rule for hours and wages in manufacturing should not be allowed to prevail over the paramount necessity of garnering and preserving fruits and grains and the protection of those who grow them when Congress equally recognized both in the Act. The hypertechnical reasoning concerning "exceptions" and "exemptions" has no place here. A direct expression of non-applicability constitutes neither.[5] The only sharply contested issue in this cause was whether or not any clause of the Act established a different policy for operations conducted by defendant as to the pressing out of juice for a limited period of time. Inasmuch as the drying of the pomace is not segregated, there is not sufficient evidence to indicate that this phase was not a part of the primary processing.

■ The court does not rule upon the question of whether by virtue of section 207

---

[3] 29 U.S.C.A. § 207(c).

[4] 29 U.S.C.A. § 213(a) (10). "(a) The provisions of sections 206 and 207 of this title shall not apply with respect to * * * (10) to any individual employed within the area of production (as defined by the Administrator), engaged in handling, packing, storing, ginning, compressing, pasteurizing, drying, preparing in their raw or natural state, or canning of agricultural or horticultural commodities for market, or in making cheese or butter or other dairy products; * * *."

[5] No formalistic characterization should be permitted in dealing with any of these clauses. The plain intention should be carried out. McDonald v. United States, 279 U.S. 12, 20–22, 49 S.Ct. 218, 73 L. Ed. 582; Cox v. Hart, 260 U.S. 427, 435, 43 S.Ct. 154, 67 L.Ed. 332 ("to exclude from the operative effect" of the statute.)

(b)(3) there are two successive periods of fourteen weeks in which seasonal[6] agricultural operations are protected. It is conceded by plaintiff that the question is whether sections 207(c) and 207(b)(3) are applicable. The court has only considered the provisions of section 207(c), but there is not sufficient evidence as to operations beyond fourteen weeks to indicate basis for injunction[7] in view of the ruling of the court on the other phase.

Injunction is denied. Findings and conclusions may be submitted.

---

[6] The Administrator has found that "the first processing and canning of perishable or seasonal fresh fruits and vegetables is a branch of an industry and of a seasonal nature within the meaning of Section 7(b) (3)." 5 Fed.Reg., No. 166, p. 3167.

[7] See Hendricks v. Di Giorgia Fruit Corporation, D.C., 49 F.Supp. 573.