## BELLAVANCE v. FRANK MORROW CO., Inc.

### Civil Action No. 104.

District Court, D. Rhode Island.

March 13, 1943.

See, also, D.C., 2 F.R.D. 118.

Sarkis K. Boyajian, of Providence, R. I., and Harold E. Cole, of Boston, Mass., for plaintiff.

Nathaniel Frucht, of Providence, R. I., for defendant.

HARTIGAN, District Judge.

This suit was for the infringement of Claims 1 and 2 of the Bellavance Patent No. 2,108,247, patented February 15, 1938, for a bracelet and method of making the same and Claims 1 and 2 of the Manickas Patent No. 2,114,930, patented April 19, 1938, relating to a bracelet. The Manickas patent was assigned on April 16, 1941, to Bellavance.

The defendant denies the validity and also the infringement of the patents in suit.

The Bellavance Patent No. 2,108,247 claims are:

1. "A bracelet structure comprising two or more longitudinally curved sections having lateral flanges inbent from flat stock of uniform thickness to form internal channels therebetween, holding members connecting adjacent ends of said bracelet sections and each having a portion fitting within the internal channel of one of said sections and abutting against the lateral flanges carried thereby, and clamping lugs struck down from said flanges engaging portions of said holding members for securing each holding member firmly to a bracelet section."

2. "The method of forming a bracelet structure which comprises, shaping metal stock to form a curved section having lateral flanges, fitting a portion of a holding member between the lateral flanges adjacent to an end portion of said section, and striking down portions of the lateral flanges upon the part of said holding member fitted between the flanges to clamp said holding member to said section while supporting the lateral faces of said flanges at points adjacent to the struck down portions."

The Manickas Patent No. 2,114,930 claims are:

1. "A bracelet structure comprising arcuate sections, a channel-shaped flange at each side edge of the sections with the flanges directed inwardly toward each other, a hinge member for holding two adjacent ends of the sections together including side plates respectively positioned between the flanges with the edges of the side plates beneath the flanges at the opposite side edges of the associated section and lugs struck from the inwardly directed portions of said flanges into binding engagement with the hinge plates for anchoring the hinge member to the bracelet sections."

2. "A bracelet structure as set forth in claim 1, characterized by a separable clasp connection between the other ends of the bracelet sections including a plate having one and positioned between opposite edge flanges of a section with the side edges of the plate beneath the flanges, lugs struck from the inwardly directed portions of said flanges into binding engagement with opposite side edges of the clasp plate and the other end of the clasp plate projecting from the carrying section of the bracelet and having separable snap connection with the free end of the other bracelet section."

The patents in suit relate to the construction of a bracelet such as is commonly used for ornamentation, the two parts of which are hinged together, and the free ends of the sections being provided with a catch and latch connection so that the bracelet may be opened for positioning around the wrist and then closed for retention on the wrist. Extending from the hinge are two plates which lie in a channel formed between the flanges at the top and bottom of the bracelet. The common way, for many years, to hold the hinge plate down to the bracelet itself was by solder. Bellavance knocked a piece of metal out of the upper flange onto the hinge plate to hold it down without the necessity of soldering, and he testified that he conceived his invention February 6, 1936, and that it showed little slots in the top and bottom of the hinge plates.

Manickas, who was a manufacturer of bracelets under the name of Plastic Craft Novelty Company, thought of the idea of strengthening the bracelet. He used the same idea of knocking the lugs out of the flange as did Bellavance and ran the hinge plate all the way under the channel, so that it comes right up to the bottom and to the top of the bracelet.

Bellavance admitted that the only difference between his construction and that of Manickas was that the Manickas flange comes up from the stock of the body so as to form a channel or U.

There are two bracelet constructions involved in this suit which the plaintiff contends infringe the patents in suit. They are plaintiff's Exhibits 2 and 5. Exhibit 2 is a bracelet made by the defendant.

Earl L. Morrow, treasurer of the defendant corporation, admitted that the first Morrow bracelet was very much like Exhibit 5, which is a Manickas bracelet except that the first Morrow bracelet had an opening or openings at the upper edges of the hinge plate in which the lugs were to be received. This bracelet was referred to as the lug type construction and followed the Bellavance and Manickas teachings. He admitted that in 1937 and 1938 the defendant made probably one hundred gross of bracelets that had the lug struck out of the flange by means of a die onto the hinge plate, as in Exhibit 5, and from two thousand to five thousand gross of bracelets, such as Exhibit 2, the flanges of which were rolled over on the hinge plate.

Exhibit 2 bracelet, the second Morrow construction, does not disclose a construction in which the lug is struck down by means of a die from the flange onto the hinge plate but rather discloses that the flange is rolled over on the hinge plate by means of a machine and not a lug struck out of the flange.

William A. Shawcross, who has been in the jewelry business for forty-two years, testified that it is quite a common matter to secure parts of bracelets together without solder by means of mechanical locks.

Bellavance admitted that the construction of Exhibit 2 does not show a lug struck out of the flange and down onto the hinge plate but that it does show the wall is brought down onto the hinge plate.

Bellavance also admitted that a combination of two sections like that as shown in his bracelet, Exhibit C, a channel wire bracelet with a hinge between two sections at one end and a releaseable connection at the other end, is old. Such construction appears in Patent No. 225,661, issued to J. Sweet, March 16, 1880, Exhibit Q. Bellavance contends that his invention is "the swaging down of the lugs to hold those hinge plates together," or the striking down

of a lug to hold the hinge plate in place between the channels of the bracelet section.

Hiering Patent No. 1,996,109, issued April 2, 1935, Exhibit Q, shows a struck-down lug to hold a plate between channels for a bag frame. Bellavance admitted that the lug shown in the Hiering patent is just like the lug shown in the two patents in suit and that his invention was taking a lug like that shown in Hiering and using it in a bracelet to hold a hinge plate down.

Armando Cianfarani testified that he manufactured a mechanical hinged bracelet like Exhibit H in 1935 and that he made the tools for the bracelet in 1934 on an order of Achille Sammartino, and "we conceived the idea of holding the flange by two lugs protruding into the piercing of the hinge, and when I got through with the tools, I got permission to make some bracelets for myself."

Achille Sammartino testified that he had been in the jewelry business for twenty-eight years and that he sold "mechanical bracelets with hinges on" and that Exhibit F and Exhibit G were types of bracelets that he made and sold in 1934.

He testified that in Exhibit F the hinge plate has openings into which the flanges are swaged and that is also true of the catch plates and that the swaging is for the purpose of locking the hinge and catch plates in place and that the hinge plate in Exhibit G is similar in construction.

Henry Hargreaves, who has been familiar with jewelry manufacturing operations for about thirty-five years and who is an expert in the jewelry business and particularly in bracelet manufacturing, testified that he manufactured and sold bracelets, Exhibit D and Exhibit E, in accordance with Hargreaves Patent No. 1,935,504, granted November 14, 1933, from 1932 up until 1935 and that the holding members of Fig. 9 of Hargreaves are held "by swaging down the channel, the two rolled edges of the channel. We swage them down tight onto that little piece." He testified that such swaging eliminates soldering the securing plates in place.

He also testified that he started tools for a bracelet, Exhibit I, in December, 1935, and manufactured that type of bracelet in 1937. The construction of Exhibit I showed that the flanges of the bracelet had saw teeth which are pressed down into

engagement with the upper surface of a hinge plate or catch plate which has corresponding corrugations.

Hargreaves testified, substantially, in regard to the following patents which constitute part of defendant's Exhibit Q that Fig. 3 and Fig. 4 of Wills Patent No. 164,118 granted June 8, 1875, for an improvement in bracelets, disclose a flange rolled over onto the a piece locking it in position by a rolled-over edge which is done without the use of solder; that Dolloff Patent No. 234,858, patented November 30, 1880, for a bracelet shows a flange bracelet made in two sections with a hinge connection and a separable connection at the other end and lines 29 to 31 read "* * * so that by slightly knurling their edges the band B will be properly held in place without the employment of solder * * *;" that Snell Patent No. 698,068, patented April 22, 1902, shows a portion of metal being pressed into another member to hold the two together; that Wallenstein Patent No. 843,243, patented February 5, 1907, discloses a bracelet construction in which a part is pressed into a groove of another part to lock the two together; that Luft Patent No. 1,339,464, patented May 11, 1920, discloses the locking or securing one wire member in a channel by means of pressure without the use of solder; that LeClair Patent No. 1,311,821, patented July 29, 1919, discloses a swaging of flanges over a metal member to lock the parts together; that Payette Patent No. 1,900,256, patented March 7, 1933, shows the locking of a sheet of metal in a channel by swaging; that Bigney Patent No. 1,916,821, patented July 4, 1933, for a bracelet shows a bracelet made of two sections of the flange type, with a hinge at one end and a releaseable connection at the other end; that Hiering Patent No. 1,996,109, patented April 2, 1935, for a "Bag Frame Member and Method of Securing Elements Thereto," shows a channel member in which a plate is secured between the flanges of the channel member by means of striking down tabs; that Peters Patent No. 2,113,310, patented April 5, 1938, for a bracelet, in Fig. 3 shows Peters shears two lugs from a particular piece of the stock which he then presses in to lock another member.

Those patents disclose a wide variety of different manners of clamping parts together, or securing them together, without the use of solder.

Hargreaves testified that such uses can be applied to jewelry articles and have been known for years in the jewelry trade as swaging. He said "For years we have swaged parts together."

Hargreaves admitted in cross-examination that up to 1937 the common way of attaching the hinge plate to the bracelet was by soldering.

Bellavance admitted that Hiering Patent No. 1,996,109, shows struck down lugs and when asked if his invention covered that kind of construction, he answered: "It is on that same principle, yes. That is a bag top."

He was asked in his deposition if Fig. 10 of Hiering shows lugs struck down to lock a plate between channels. He answered: "Yes, that is a channel." When he was asked to compare the Manickas construction with his, he said: "The only difference is that he runs his plate under the channel. He shows it and I do not so show it."

I find, and the record convinces me beyond any doubt, that the claims of both patents in suit are fully anticipated by the prior art and particularly by the disclosure of the Hiering patent.

I find that the Bellavance and Manickas bracelets are not the result of invention as distinguished from mere mechanical skill possessed by those skilled in the art to which they appertain.

I find that both patents in suit are invalid and are not infringed.

Justice Bradley of the United States Supreme Court, in the case of Atlantic Works v. Brady, 107 U.S. 192, 200, 2 S.Ct. 225, 231, 27 L.Ed. 438, said concerning the design of the patent laws: "It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention. It creates a class of speculative schemers who make it their business to watch the advancing wave of improvement, and gather its foam in the form of patented monopolies, which enable them to lay a heavy tax upon the industry of the country, without contributing anything to the real advancement of the art. It em-

580

barrasses the honest pursuit of business with fears and apprehensions of concealed liens and unknown liabilities to lawsuits and vexatious accountings for profits made in good faith."

In dealing with the question of invention vs. mechanical skill, the court said in the case of Jaite-Grant Display Bag Company v. Thomas M. Royal & Company, D. C., 27 F.Supp. 251, at page 252:

"The patent laws are meant to promote a policy of the law. That policy is to stimulate progress in the arts and sciences. Few things come to us full fledged. There is almost always room for improvement. Patents would be a hindrance instead of a spur to progress, if every improvement which skill might devise, conferred a monopoly. It should always be kept in mind that a patent confers a monopoly. * * *

"The problem was not beyond the skill of those trained in the art. Any one employed in an art has the right to use his skill, unhampered by what another in the exercise of a like skill may have done. It is only when he crosses over into the field of invention that he must give way to one who has preceded him. A law which gave a patent to every product of mere skill would be based not only on a mistaken policy but would be impracticable."

The United States Supreme Court in the case of Altoona Theatres v. Tri-Ergon Corp., 294 U.S. 477, 486, 55 S.Ct. 455, 458, 79 L.Ed. 1005, said: "An improvement to an apparatus or method, to be patentable, must be the result of invention, and not the mere exercise of the skill of the calling or an advance plainly indicated by the prior art. Electric Cable Joint Co. v. Brooklyn Edison Co., 292 U.S. 69, 79, 80, 54 S.Ct. 586, 78 L.Ed. 1131."

In Cuno Corp. v. Automatic Devices Corp., 314 U.S. 84, 91, 92, 62 S.Ct. 37, 38, 86 L.Ed. 58, where "the claims in question are for improvements in lighters, commonly found in automobiles, for cigars, cigarettes and pipes," the court said:

"* * * the new device, however useful it may be, must reveal the flash of creative genius, not merely the skill of the calling. If it fails, it has not established its right to a private grant on the public domain.

"Tested by that principle, Mead's device was not patentable. We cannot conclude that his skill in making this contribution reached the level of inventive genius which the Constitution, Art. I, § 8, authorizes Congress to reward. He merely incorporated the well-known thermostat into the old 'wireless' lighter to produce a more efficient, useful and convenient article. Cf. Electric Cable Joint Co. v. Brooklyn Edison Co., supra. A new application of an old device may not be patented if the 'result claimed as new is the same in character as the original result' (Blake v. San Francisco, 113 U.S. 679, 683 5 S.Ct. 692, 694, 28 L.Ed. 1070), even though the new result had not before been contemplated. Pennsylvania R. Co. v. Locomotive Engine Safety Truck Co., 110 U.S. 490, 494, 4 S.Ct. 220, 222, 28 L.Ed. 222, and cases cited. Certainly the use of a thermostat.to break a circuit in a 'wireless' cigar lighter is analogous to, or the same in character as the use of such a device in electric heaters, toasters, or irons, whatever may be the difference in detail of design. Ingenuity was required to effect the adaptation, but no more than that to be expected of a mechanic skilled in the art."

Applying the rule of law as laid down in Cuno Corp. v. Automatic Devices Corp., supra, to the facts in the instant case, it is my opinion that the Bellavance and Manickas bracelets are not patentable.

Judgment is, therefore, entered for the defendant for costs.