## McCOMB v. C. H. MUSSELMAN CO.
### Civ. No. 2662.

District Court, M. D. Pennsylvania.
Oct. 28, 1947.

William S. Tyson, Sol., Jeter S. Ray, Associate Sol., and John J. Babe, Asst. Sol., all of Washington, D. C., and Ernest N. Votaw, Regional Atty., of Philadelphia, Pa., for plaintiff.

Arthur H. Hull and George H. Hafer, both of Harrisburg, Pa., for defendant.

Kathryn Casey, of Washington, D. C., for amicus curiæ, International Apple Assn.

H. Thomas Austern and Howard P. Castle, both of Washington, D. C., for amicus curiae, National Canners Assn.

WATSON, District Judge.

This action is before the Court upon the complaint by the Administrator of the Wage and Hour Division of the United States Department of Labor, alleging violations on the part of C. H. Musselman Company, the defendant, of the Fair Labor Standards Act of 1938, U.S.C.A., Title 29, § 201 et seq.; and requesting an injunction restraining further violations.

The facts in the case were stipulated, arguments were heard, and briefs were filed by the parties and by the International Apple Association and the National Canners Association amici curiæ.

The defendant has been and now is engaged in its plants at Biglerville, Pennsylvania, Gardners, Pennsylvania, and Inwood, West Virginia in its first processing and canning of perishable or seasonal

---

fresh fruits and vegetables. The particular employees, whose compensation is complained of, are those engaged in pomace drying operations. The Administrator seeks to enjoin the defendant requiring it to pay the employees so engaged time and one half for hours worked over 40 in a work week. The defendant contends that it is relieved from so doing by virtue of exemptions in the Act. The question is the applicability of the exemptions provided therein by Sec. 7(b) (3) and 7(c), 29 U.S.C.A. § 207(b) (3) and 207(c).[1]

During the period beginning approximately September 1 and ending approximately February 1, and depending upon the size of the apple crop, but not exceeding 28 weeks in the aggregate in any calendar year since October 24, 1940, C. H. Musselman Company has employed in each calendar year during such period 1,800 employees in and about its three plants heretofore referred to. During the remaining period in each calendar year since October 24, 1940, the total number of employees at the three plants of C. H. Musselman Company has been approximately 350. During the period beginning September 1 and ending approximately February 1, the number of employees engaged in pomace drying operation in each calendar year since October 24, 1940 has been 3, 2, and 6 at the Biglerville, Gardners, and Inwood plants respectively.

Beginning approximately September 1 of each year, and for about 14 weeks thereafter, apples are delivered to the defendant's plant at Biglerville. There they are weighed and then, as needed, go through the following process: the apples are deposited in a trough and, by a current of water in that trough, are conveyed to the cannery from the warehouse. From the trough the apples are ejected to a sorter constructed of moving link chain belts with holes of various sizes. Apples larger than 2¼ inches in diameter are conveyed to the canning room where they are carried through a series of paring and coring machines, after which they are conveyed past workers, who remove apples unsuitable for slicing and canning, and who remove remaining peel or bruised specks from such apples.

Apples smaller than 2¼ inches in diameter fall through the holes in the first series of belts on to a conveyor, to be carried to the press room to a grinder. These small apples are intermingled in the press room with the apple peelings and cores, and with the whole apples unsuitable for slicing and canning and with the bruised specks and peelings removed by the workers referred to above; and also with the remnants of cores from the apple slicing machines. All of the foregoing are ground into a mash, which is then subjected to high pressures to extract the juice, after which the grinding is repeated, and the mash is again subjected to high pressures.

---

[1] The pertinent portions of the Act are as follows:

"Sec. 7(a) No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce— * * *

"(3) for a workweek longer than forty hours after the expiration of the second year from such date, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

"(b) No employer shall be deemed to have violated subsection (a) by employing any employee for a workweek in excess of that specified in such subsection without paying the compensation for overtime employment prescribed therein if such employee is so employed—* * *

"(3) for a period or periods of not more than fourteen workweeks in the aggregate in any calendar year in an industry found by the Administrator to be of a seasonal nature, and if such employee receives compensation for employment in excess of 12 hours in any workday, or for employment in excess of 56 hours in any workweek, as the case may be, at a rate not less than one and one-half times the regular rate at which he is employed.

"(c) * * * and in the case of an employer engaged in the first processing of, or in canning or packing, perishable or seasonal fresh fruits or vegetables, * * * the provisions of subsection (a), during a period or periods of not more than fourteen workweeks in the aggregate in any calendar year, shall not apply to his employees in any place of employment where he is so engaged."

The solid pulp remaining after the second pressing, called "green pomace" is again broken up into fine pieces and conveyed to kilns, where the green pomace is dried, which drying process is conducted by employees, whose overtime hours are involved here. The dried pomace is packed into bags and stored for use in making pectin for use or sale by the defendant.

Plaintiff's right to succeed depends upon the interpretation and application of the phrase "first processing", as used in Sec. 7(c) of the Act. If defendant's operation be deemed the "first processing of * * * perishable or seasonal fresh fruits", then both of the exemptions are properly claimed, since the Administrator has found the first processing of apples to be an industry of a seasonal nature within the meaning of Sec. 7(b) (3) of the Fair Labor Standards Act.

"Process" has been defined as follows: "A series of actions, motions, or occurrences; progressive act or transaction; continuous operation or treatment, a method of operation or treatment as the process of vegetation." Webster's New International Dictionary.

However, we are concerned here with "first processing", as used in 7(c) of the Act. That section provides a 14 week exemption as to the employees of an employer engaged in the "first processing of, or in canning or packing, perishable or seasonal fresh fruits or vegetables." It is clear that the requirements for the first processing exemption are: (1), The fruit or vegetable which is being processed must be fresh; (2) It must be seasonal or perishable; (3), Processing must be that which first converts the fresh fruit or vegetable into a nonperishable salable product. The ingredients of which the pomace is composed are as follows: whole apples less than 2¼ inches in diameter, peelings, and cores of fresh apples, and whole apples peeled but not sliced. It must be conceded that all of these ingredients are fresh, although the Administrator contends to the contrary. The apples, and parts thereof, from which the pomace is made, are both seasonal and perishable, all of which is agreed to in the stipulation of facts. The first process continues until a non-perishable and salable product is produced; otherwise, the exemption would be entirely meaningless, and would fail to accomplish its purpose of providing relief for the processor of perishable commodities during the peak season. A non-perishable product results only after the pomace has been completely dried. Without this complete drying, the green pomace is entirely useless, for fermentation begins within a short time resulting in loss of its pectin content. As the green pomace is highly perishable and non-salable, the only conclusion is that the first process continues at least until the pomace is thoroughly dried, when it becomes a non-perishable and salable product.

In the opinion of this Court, the admitted facts bring defendant's pomace processing operations within the requirements of the first processing exemption. Certainly Congress did not intend to penalize employers for converting the little apples "which God made", the peelings and cores of other apples, and whole apples already peeled, all perishable, into a nonperishable salable product. In Walling v. California Conserving Co., D.C.N.D.Cal. 1945, 74 F.Supp. 182, an identical question was before the Court, and it was held that the employer of those engaged in processing of apple pomace was clearly within the Sec. 7(c) exemption. In Hendricks v. Di Giorgio Fruit Corporation, D.C.N.D.Cal. 1943, 49 F.Supp. 573, a similar question was involved and the Court, in a well reasoned opinion, found that the 7(c) and 7(b) (3) exemptions were properly taken.

Under the plain meaning of the Statute and the Congressional intent, the Administrator is not entitled to the relief prayed for. The exemptions provided by Sec. 7 (c) and 7(b) (3) of the Fair Labor Standards Act were properly taken by the Defendant, C. W. Musselman Company; and judgment will be entered in favor of the Defendant upon the Findings of Fact and Conclusions of Law filed herewith.

### Findings of Fact.

1. C. H. Musselman Company is a corporation organized under and existing by virtue of the laws of the Commonwealth

of Pennsylvania, having its principal office, place of business, and a manufacturing plant at Biglerville, Adams County, Pennsylvania, with additional plants at Gardners, Adams County, Pennsylvania, and Inwood, Berkely County, West Virginia.

2. C. H. Musselman Company is engaged in its three aforementioned plants in the production, sale and distribution of dried apple pomace.

3. Substantially all of the pomace produced at each of the three plants of the C. H. Musselman Company is produced for interstate commerce, or is used in the production of goods for interstate commerce, and such pomace or goods has been shipped, delivered, transported, offered for transportation and sale in interstate commerce, with knowledge that shipment, delivery or sale thereof in interstate commerce is intended from defendant's said places of business to other states.

4. The Administrator has found that C. H. Musselman Company is and was at all times mentioned in the Complaint engaged in all of its plants in the first processing and canning of perishable or seasonal fresh fruits and vegetables, an industry of a seasonal nature within the meaning of Section 7(b) (3) of the Fair Labor Standards Act of 1938 and of the Regulations issued thereunder.

5. Beginning approximately September 1 of each year, and for about 14 weeks thereafter, apples are delivered to the defendant's plants. There they are weighed and, as needed, are processed.

6. The apples are first deposited in a trough and, by a current of water in that trough, are conveyed to the cannery from the warehouse. From the trough the apples are ejected on to a sorter constructed of moving link chain belts with holes of various sizes.

7. Apples larger than 2¼ inches in diameter are conveyed to the canning room where they are carried through a series of paring and coring machines, after which they are conveyed past workers, who remove apples unsuitable for slicing and canning, and who remove remaining peel or bruised specks from such apples.

8. Apples smaller than 2¼ inches in diameter fall through the holes in the first series of belts on to a conveyor, to be carried to the press room with the apple peelings and cores, and with the whole apples unsuitable for slicing and canning, and with the bruised specks and peelings removed by the workers referred to above, and also with the remnants of cores from the apple slicing machines.

9. All the foregoing are ground into a mash, which is then subjected to high pressures to extract the juice, after which the grinding is repeated, and the mash is again subjected to high pressures.

10. The solid pulp remaining after the second pressing, called "green pomace" is again broken up into fine pieces and conveyed to kilns, where the green pomace is dried, which drying process is conducted by employees, whose overtime hours are involved here. The dried pomace is then packed into bags and stored for use in making pectin.

11. The small whole apples conveyed directly from the sorter to the grinding machines constitute not less than 25 per cent. and not more than 50 per cent. of the material placed in the grinding machines.

12. The dried pomace is used solely for making pectin, part of the pomace being used by the defendant to make pectin for use in making jellies, and the remainder being sold to other food processors for making pectin.

13. During the weeks not exceeding 14 in the aggregate in any calendar year since 1940, for which the employer claimed the benefit of the exemption under Section 7 (c) of the Fair Labor Standards Act of 1938, some of the employees engaged in pomace drying operations at each of the defendant's plants have worked in excess of 40 hours per work week and have not been paid overtime for the hours worked beyond 40 in the work week, except for voluntary payments of time and one half for all Sundays and holidays.

14. During the weeks not exceeding 14 in the aggregate in any calendar year since 1940, for which the employer claimed the benefit of the exemption under Section 7

(b) (3) of the Fair Labor Standards Act of 1938, each employee engaged in pomace drying operations at each of the defendant's plants has been paid at a rate not less than one and one half time the regular rate at which such employee is employed for all time in excess of 56 hours during any work week of such period or in excess of 12 hours in any work day during any work week of such period, and has been paid the regular rate only for hours worked in excess of 40 and less than 56 during such weeks, except that the employer voluntarily paid at time and one half rates for work performed on Sundays and holidays.

15. During no calendar year since October 24, 1940 has C. H. Musselman Company engaged in pomace drying operations at any of its plants for a period in excess of 28 weeks in the aggregate in any calendar year.

16. The employees engaged in pomace drying operations include employees who spread the green pomace on the metal kiln floors, attend the coke fires under the kilns and turn the pomace while in the process of drying, and who remove the pomace when dried from the kiln floors and place it on a conveyor.

17. The apples, cores, peelings, and apples peeled but not sliced; that is, the material submitted to the processing resulting in the green pomace, are all fresh fruit or fresh parts of fresh fruit.

### Conclusions of Law

1. Defendant's employees engaged in drying of apple pomace are engaged in the production of goods for interstate commerce.

2. The overtime requirements of the Fair Labor Standards Act of 1938, Sec. 7(a), are not applicable to the defendant's employees who are engaged in the drying of apple pomace.

3. The drying of apple pomace, as performed in defendant's plants, and by those employees described in Finding of Fact number 16, above, is "first processing" of perishable or seasonal fresh fruits, as included in Sec. 7(c) of the Fair Labor Standards Act of 1938.

4. The drying of apple pomace by the defendant's employees is within the exemption from the overtime requirements of the Fair Labor Standards Act which exempts an "employer engaged in the first processing of * * * perishable or seasonal fresh fruits or vegetables" from the provisions of Sec. 7(a).

5. The Administrator has found the first processing of apples to be an industry of a seasonal nature and a fortiori the drying of apple pomace being first processing of the apple, the partial exemption from the overtime provisions of the Act, contained in Sec. 7(b) (3) of the Fair Labor Standards Act of 1938 is applicable to those employees engaged in apple pomace drying.

6. Defendant has not violated either Sec. 15(a) (1) or Sec. 15(a) (2) of the Fair Labor Standards Act of 1938.

7. Plaintiff is not entitled to the entry of a decree enjoining the defendant.

8. The prayer of the petition should be denied.

Now, October 28, 1947, the prayer of the plaintiff for an injunction is denied, and the action is dismissed.