McCOMB, Administrator of Wage and Hour Division, U. S. Department of Labor, v. HUNT FOODS, Inc.

No. 11685.

Circuit Court of Appeals, Ninth Circuit.

April 14, 1948.

. DENMAN, Circuit Judge, dissenting.

William S. Tyson, Sol., Bessie Margolin, Asst. Sol., Morton Liftin, and Sidney S.

Bernan, Attys., U. S. Dept. of Labor, all of Washington, D. C., and Herman Marx, Regional Atty., of San Francisco, Cal., for appellant.

Clarissa Shortall, of San Francisco, Cal., for appellee.

H. Thomas Austern, of Washington, D. C., for National Canners Ass'n, amicus curiæ.

Before GARRECHT, DENMAN, and BONE, Circuit Judges.

BONE, Circuit Judge.

This is an appeal from a judgment of the district court in an action under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. The facts and the legal issues involved are fully discussed in the opinion of the lower court.[1]

The issues here are clearly and concisely presented in the briefs of the parties. Appellant says the question is

"Whether the defendant's operations with respect to apple peelings and cores received from dehydrating plants constitute 'the first processing of * * * fresh fruits' either (1) within the meaning of the Administrator's regulation promulgated under Section 7(b) (3) of the Act, or (2) within the meaning of Section 7(c) of the Act."

Appellee states the questions as:

"(1) Are the employees engaged in the production of apple juice, fermented apple cider and pomace at appellee's Graton plant within the exemption and exception from the Maximum Hour provisions afforded by Section 7(c) of the Fair Labor Standards Act of 1938 (29 U.S.C.A., Sec. 207(c))? and

"(2) Are the employees engaged in the production of apple juice, fermented apple cider and pomace at appellee's Graton plant within the exemption and exception from the Maximum Hour provisions afforded by Section 7(b) (3) of the Fair Labor Standards Act of 1938 (29 U.S.C.A., Sec. 207(b) (3))?"

[1,2] The Fair Labor Standards Act was fashioned to accomplish certain results—to benefit labor and also to make specific beneficial exemption provisions for a certain class of employers described in the Act. Whatever the motive of Congress in so framing this type of "double-barreled" legislation, the fact remains that its provisions must be read and applied as a whole. The exemption provisions clearly indicate a deliberate purpose on the part of Congress to exclude certain business operations from the sweep of the statute. This obvious purpose is noted and recognized in the language of the lower court where it stated:

"The policy of protection to the growers of 'perishable and seasonal fresh fruits' is of as much force as that of the protection of general industrial workers. The objective of a uniform rule for hours and wages in manufacturing should not be allowed to prevail over the paramount necessity of garnering and preserving fruits and grains and the protection of those who grow them when Congress equally recognized both in the Act. The hypertechnical reasoning concerning 'exceptions' and 'exemptions' has no place here. A direct expression of non-applicability constitutes neither."

This is but another way of saying that if the business operations claimed to be exempt are found to fall within the exempt classification, the statute is, as to them, a "remedial" statute. We agree with the lower court that no formalistic characterization should be permitted in dealing with any of these clauses since the plain intention of the statute should be carried out.

The Wage and Hour Division has recognized the clear intendment of the statute in this language:

"The purpose of Section 7(c), as shown by the legislative debates, was to relieve processors and packers of seasonal agricultural commodities from the burden of paying overtime compensation during those peak seasons of the year when large fluctuating quantities of perishable agricultural commodities move from the farms to the processing establishments, which commodities must be processed as soon as they ar-

---

[1] Walling v. California Conserving Co., D.C., 74 F.Supp. 182. See also McComb v. C. H. Musselman Co., D.C., 74 F.Supp. 185 and Hendricks v. DiGiorgio Fruit Corp., D.C., 49 F.Supp. 573, both cases dealing with a similar state of facts.

rive." Wage and Hour Release No. 1892, Jan. 25, 1943.[2]

■ Are the materials used by appellee "perishable or seasonal fresh fruits?" That the apple cores, peelings and culls (or small whole apples) used by appellee are perishable and seasonal in nature is clear. The small whole apples, which constituted 10 to 28% of the materials used by appellee, are "fresh fruits." However, appellant urges that the peelings and cores are not fresh fruits within the meaning of the statute (notwithstanding they are perishable). There is nothing in the statute or in its legislative history to call for the conclusion that such fruits as it refers to must be whole or must be in an edible state. The fact that the whole apple has been cut up does not lead to the conclusion that the resulting parts of the apple are not still in a raw and natural state, any more than if the apple had been merely dimidiated. Appellant states that the Administrator has interpreted "fresh fruits" to mean fruits "in their raw or natural state as distinguished from them after they are 'processed,' canned, or dried." The peels and cores used by appellee had not been processed when appellee acquired them any more than the main edible portion of the apple had been processed upon its being peeled and cored. By appellant's own definition therefor, the peels and cores are no less fresh fruit than the portion of the apple from which they have been removed.

■ Was appellee engaged in "first processing" within the meaning of the statute? The word "process" by definition means a series of acts, and the test of when "first processing" ends is obviously not when the first act performed upon the fruit is done (it might well be "first processed" by a preliminary washing of the apples if this view was sound). A more rational view suggests the conclusion that the sum of several operations may well constitute a "process" or "processing." The cutting and peeling admittedly does not end the first processing of the major part of the apple which is later dehydrated, yet appellant maintains that the first processing (so far as the peels and cores are concerned) has ended at this point, while these parts of the apple have in fact not yet been "processed" in any manner and have yet to be converted into juice or pomace. This argument does not appeal to us.

The Administrator has not attempted to exclude from the statute in question those who extract tomato puree from the residue remaining after the whole tomato is canned, yet there would seem to be little material and practical difference between such an operation and the one in the case at bar.

Whether dehydrating one part of the apple and making of juice and pomace from other parts of the same apple is accomplished on a continuous production line under one roof, or is accomplished by dividing the practically simultaneous operations between two adjacent producers, would seem to be irrelevant. The dehydrating, and making of juice and pomace are all part and parcel of the speedy and continuous process of converting the perishable apple into a non-perishable salable product. Appellant himself concludes that the first processing exemption "was designed to cover only those integrated activities which are part of the continuous operation of converting the whole fresh fruit, as it comes from the farm, *into a non-perishable product.*" (Emphasis supplied.) If this hurried and continuous process is deemed to end when part of the apple (the peels and cores) has not been processed at all and is still in its natural and perishable state, what seems to us to be the logical objective of the exception to the forty hour week requirement is frustrated, and a large proportion of this part of the fruit may easily become a total loss.

Resort to other phrases of the statute covering operations in other industries, such as "slaughtering," or "dressing poultry or livestock," cannot be had to defeat the patent purport of the words specifically applying to those engaged in the "first processing of * * * perishable or seasonal fresh fruits or vegetables." We do not impute to Congress the doing of a useless thing in employing the word "first" before

---

[2] In argument here, counsel for appellant assured us that the exemption issue was the only one in which appellant was interested.

the word processing, but the language, available history, and what we believe to be the clear purpose of the statute, cannot but lead to the conclusion that so long as the fresh fruit, in whole or in part, has not been converted into a non-perishable form; so long as a "converting" process continues which can not be safely halted prior to its consummation, the "first processing" of which the statute speaks, has not been ended.

■■ It is not necessary to emphasize the point that since the Fair Labor Standards Act is a remedial act, persons and/or business operations claiming to come within exemptions therein must bring themselves within both the letter and the spirit of the exceptions, which are subject to a strict construction. Due and proper deference to this principle does not call upon us deliberately to overlook or disregard a Congressional direction to apply all of the remedial provisions in accordance with the clearly expressed purposes of the Act. We agree with the conclusion of the trial court that the "remedial" provisions apply to activities excepted by the statute to the same degree and in as full measure as those which by their nature were intended to be brought, in their entirety, within the orbit of the statute, if it is made clear by the evidence that the claim of "exception" is supported by adequate proof. In such event, the Act is "remedial" as to the activities claimed and proven to be excepted, and its remedial provisions inure to the benefit of those shown to be engaging in such excepted activities.

■ Under the most narrow construction we are, for the reasons indicated above, constrained to the view that appellee must prevail. We regard its operations, as revealed by satisfactory evidence, to be of a character which brings it "plainly and unmistakably within the terms and spirit" of the exemption provisions of the Act.

Three experienced trial judges faced the problem here posed (see footnote 1) and arrived at the conclusion we reached, and this uniformity of judicial expression in the district courts is significant and impressive.

The judgment of the district court is affirmed.

DENMAN, Circuit Judge (dissenting).

I do not agree that the "first processing * * * of fresh fruits" in the exceptive clause, Section 7(c) of the Fair Labor Standards Act, means all the processes to which the fresh fruit is subject till it ceases to be fresh fruit and is in the "non perishable" form of a fruit product. So to construe the provision of 7(c) is to make the adjective "first" meaningless and to ignore the cardinal rule of construction that words in a statute shall be given effect and not made nugatory. By such unwarranted interpretation of an exceptive clause, non agricultural laborers in a plant in part chemical are denied the benefit of that act.

So, also, if first processing means all processing till the fruit ceases to be fresh, that is, "non perishable," the immediately succeeding word "canning" is meaningless. Section 7(c) makes an exception of wage earners in "first processing of, or in canning or packing perishable seasonal fresh fruits." Canning processes the fresh fruit until it ceases to be fresh and becomes "non perishable." The disjunctive "or" shows that "canning" means something different from "first" processing. If it does not, Congress would not have specified it in the exception. The words "first processing" would have included it. So, also, of the word "packing." This is often done by farmers. If "first" processing includes processing till the fresh fruit is packed for the ultimate consumer, the word "packing" is surplusage.

The specific words of Congress are what we are required to construe. We cannot escape that obligation by saying that to perform it is to indulge in "hypertechnical reasoning." As a wag of a judge once stated, this is a weasel phrase to rationalize a desired result which gives relief from the bother of considering the carefully prepared contentions of a litigant.

The appellee is a manufacturer of fermented apple cider, apple juice and pomace from the cores and skins of apples, which it purchases from dehydrators of apples.

Appellee's manufacturing enterprise consists of a treatment of the cores and skins, in part chemical. It is a manufacture entirely apart from farming. No farmer is

shown to conduct such manufacture of cores and skins as a part of his production of apples. We must assume that Congress made the instant exception to the Fair Labor Standards Act, with a view to actual relationship of the employees of this manufacturing process to the producing orchardists.[1] In no sense are the men in appellee's plant agricultural laborers, a matter later considered.

The process by which the skins and cores are cut from the apples by the dehydrators is mechanical. A coring machine cuts out the apple cores. A machine with a knife edge cuts the skin from the apple.

The cores and skins so processed become articles of commerce. As such, they are purchased by appellee from the dehydrators.

A minor part of appellee's raw material is of culled inedible apples bought from farmers. These are mixed with the cores and skins for the ensuing treatment producing pomace, cider and cider vinegar. It is arguable that the culling is a first processing. However, assuming it is not, culled apples constitute but from 10% to 28% of the total raw material. The employment of the men in such manufacture for the 72% to 90% of skins and cores is in violation of the Act, if they are not engaged in a first processing in appellee's plant.[2]

It is apparent from the above facts that there never can be two or more processings of fresh fruits if the mechanical processing of cores and skins prior to their sales to the manufacture in a market of such products is not a first processing. Whatever labor occurs after the sale is not farm, but manufacturing, labor. If all the successive processings till the apples are in the form of pomace and chemically produced cider are a first processing, then, as stated, the adjective "first" before the word "processing" must be construed as used by Congress with no meaning at all.

It seems clear that the manufacture by appellee's laborers is a second processing within the meaning of the exceptive provision 7(c). Were it not clear, such an interpretation is not irrational and must be sustained under the rule stated by this court in Consolidated Timber Co. v. Womack, 9 Cir., 132 F.2d 101, 106, that such exceptions to the Fair Labor Standards Act are to be strictly construed in favor of the laborer, a rule later stated by the Supreme Court: "To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and to frustrate the will of the people." A. H. Phillips, Inc., v. Walling, 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095, 157 A.L.R. 876.[3]

---

[1] The district court seemed impressed with the possibility that the payment of overtime after 40 hours might make appellee's manufacture of cider and pomace too costly to pay a profit and hence the dehydrators would not have a market for their cores and skins and would pay the farmers less for their apples, while the farmers producing the cut cores and skins for appellee would have no market for them. There are no figures in evidence supporting such result from paying overtime. Even if this were true of this particular pomace and cider plant, we would deem it not relevant to the construction of the Act.

[2] Wabash Radio Corp. v. Walling, 6 Cir., 162 F.2d 391, 394. See also Collins v. Kidd Dairy & Ice Co., 5 Cir., 132 F.2d 79; Walling v. Connecticut Co., 2 Cir., 154 F.2d 552; Walling v. Goldblatt Bros., 7 Cir., 152 F.2d 475, 477; Davis v. Goodman Lumber Co., 4 Cir., 133 F.2d 52. And as was pointed out in the Wabash decision 162 F.2d at page 394, "Where

the exempt and nonexempt characteristics of the business are so intermingled as to be inseparable, the exemption is denied entirely". Citing Guess v. Montague, 4 Cir., 140 F.2d 500.

[3] Virtually all the Circuit Courts of Appeals have also announced the same viewpoint with respect to exemptions from the Fair Labor Standards Act. See Fleming v. Hawkeye Pearl Button Co., 8 Cir., 113 F.2d 52, 56; Fleming v. Palmer, 1 Cir., 123 F.2d 749, 762, certiorari denied Carribbean Embroidery Co-op. v. Fleming, 316 U.S. 662, 62 S.Ct. 942, 86 L.Ed. 1739; Bowie v. Gonzalez, 1 Cir., 117 F.2d 11, 16; Walling v. Reid, 8 Cir., 139 F.2d 323; Helena Glendale Ferry Co. v. Walling, 8 Cir., 132 F.2d 616; West Kentucky Coal Co. v. Walling, 6 Cir., 153 F.2d 582; Fletcher v. Grinnell Bros., 6 Cir., 150 F.2d 337; Walling v. Consumers Co., 7 Cir., 149 F.2d 626; Anderson v. Manhattan Lighterage Corp., 2 Cir., 148 F.2d 971; Walling v. Keansburg Steamboat Co., 3 Cir., 162 F.2d 405.

It is true that this exceptive provision is for the purpose of denying the relief of the Fair Labor Standards Act to labor employed in canning and packing, often performed by farmers and hence for the benefit of the farmer who, if not a canner or packer, will obtain a better price from the purchasing canner or packer. However, the dominant purpose of that act is its benefit to labor, and the rule construing exceptive provisions in favor of the laborer is here peculiarly applicable. As stated, the men in manufacturing plants of appellee's type are not agricultural laborers, nor are they within the exception of canning or packing labor.

How dominant is protection of the right to the minimum wages of the Fair Labor Standards Act of labor engaged in interstate commerce, as are appellee's employees, is shown in two recent well considered cases, one in the third and another in the first circuit. That act also excepts "any employee employed as a seaman" in interstate commerce, as farm labor is here. In Walling v. Keansburg Steamboat Co., 3 Cir., 162 F.2d 405, one of the questions was whether certain employees of the steamboat company were seamen. They were engaged on its passenger vessels during the mooring period. It was held that a person *previously employed on the vessel as a seaman who continued* to do seaman's work in the mooring period was within the exception, id. at page 407. On the other hand, if the laborers were employed on the passenger vessels during the mooring period only and were not required to sign articles, the rule of strict construction of the exception required the holding they were not seamen, although working side by side with the excepted seamen.

Walling v. Bay State Dredging and Contracting Co., 1 Cir., 149 F.2d 346, 349, 161 A.L.R. 825, certiorari denied, 326 U.S. 760, 66 S.Ct. 140, 90 L.Ed. 457, held similarly that the employees of a dredge were not within the exception of those "employed as seamen," though such dredgermen are "seamen" within the meaning of the Merchant Marine Act of 1920, 46 U.S.C.A. § 688, Kibadeaux v. Standard Dredging Co., 5 Cir., 81 F.2d 670, and in general maritime law are "seamen" engaged in aiding commerce and hence entitled to maritime liens for their wages, Saylor v. Taylor, 4 Cir., 77 F. 476, 478. It seems apparent that under the principle established in these circuits of strict construction of clauses excepting labor from the act, the non-farm labor engaged in interstate commerce in appellee's factory can not be classified as in a first processing of farm products.

The Administrator has on several occasions interpreted the language of Section 7 (c) in accord with this opinion. In appraising the meaning of "first processing," the Administrator concluded that the term "processing" connotes a change in the form of the raw material, and, therefore, that "first processing" meant the first change in the form of the raw materials. This interpretation was publicly announced in Interpretative Bulletin No. 14, paragraph 15 (first issued in August, 1939), and in opinion letters to the public. At the same time, the Administrator interpreted "fresh fruits" to mean fruits "in their raw or natural state as distinguished from them after they are 'processed,' canned, or dried." Paragraph 19. To illustrate the content of his interpretation, the Administrator referred to certain operations which would not be considered exempt and specifically mentioned the crystallizing of citrus peels, and the drying of citrus waste for conversion into cattle food. (Paragraph 19 of Interpretative Bulletin No. 14.) In these examples the Administrator made clear that he did not regard the processing of parts removed from fresh fruits, such as the peel or pulp, as the first processing of fresh fruits. This view applied to the processing of apple peels and cores as well as to orange peels and waste, and the Administrator so stated in an opinion letter dated May 18, 1942.

Concerning the value of these interpretations of the statute, they "are entitled to great weight." United States v. American Trucking Assns., 310 U. S. 534, 549, 60 S. Ct. 1059, 1067, 84 L.Ed. 1345. As was stated by the Eighth Circuit in Miller Hatcheries v. Boyer, 131 F.2d 283 at page 286, 386:

"The practical interpretations which the Administrator and his staff have been re-

quired to make in applying and placing the provisions of the Act in social and industrial operation should be recognized as having peculiar persuasiveness and weight. Unless such a construction is one which could not reasonably or soundly be made under the terms of the statute, it should ordinarily be accepted by the courts."

At the trial, it was admitted that the appellee had not violated the record keeping provisions of the Act. The Administrator is entitled to an injunction against the violation of the overtime provisions and the sale of the products of the skins and cores and, incidentally, used apple culls in interstate commerce. The judgment should be reversed and the district court ordered so to enjoin the appellee.