James P. MITCHELL, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

OREGON FROZEN FOODS COMPANY and Ore-Ida Potato Products, Incorporated, Defendants.

Civ. No. 7583.

United States District Court
D. Oregon.

Oct. 2, 1956.

Kenneth C. Robertson, Regional Atty., Dept. of Labor, James F. Scott, Asst. Regional Atty., San Francisco, Cal., for plaintiff.

Gallagher & Gallagher, Ontario, Or., for defendants.

EAST, District Judge.

Plaintiff brings this action to enjoin defendants from violating the provisions of Sections 215(a) (1) and 215(a) (2) of the Fair Labor Standards Act of 1938, as amended, Act of June 25, 1938, c. 676, 52 Stat. 1060, as amended by Act of October 26, 1949, 63 Stat. 910, 29 U.S. C.A. § 201 et seq.

### Parties

Plaintiff is the Secretary of Labor, United States Department of Labor.

Defendants are the Oregon Frozen Foods Company and Ore-Ida Potato Products, Inc. Both are Oregon corporations located in Ontario, Oregon.

Defendant Oregon Frozen Foods is engaged in freezing corn on the cob, whole kernel corn, diced carrots, and mixing frozen mixed vegetables.

Defendant Ore-Ida Potato Products, Inc., is engaged in freezing hash brown, French fried, French cut and shredded potato patties.

Buildings, premises and all machinery and equipment used by defendants are owned by Oregon Industries Co., an Oregon corporation. Each defendant leases approximately one-half of the premises from Oregon Industries Co. Mr. F. Nephi Grigg is President of the three firms and has general overall supervision and management, although each company has its own officers, directors and general manager. The general manager exercises direct supervision of the production operation of the particular defendant.

### Agreed Facts

Substantially all of the goods produced by each of the defendants and their employees are produced for interstate commerce.

Administrative personnel, refrigeration employees and storage employees are paid by defendants, cost either being pro-rated or paid by particular defendant whose goods are being produced at a particular time.

Ontario, Oregon, has a population of 4,465 persons.

All corn and carrots frozen by Oregon Frozen Foods Co., during the period in question came from farms within 15 airline miles of the establishment.

The active corn season is from August 1st to October 10th each year, a period of approximately 10 weeks.

The active carrot season when carrots are received at the plant from growers is from October 15th to about December 1st each year, a period of approximately 6 weeks.

From October into the following January, frozen lima beans, frozen string beans and frozen peas are purchased from other concerns. These products are mixed by Oregon Frozen Foods Co., with the whole kernel corn and diced carrots and the resultant mixture sold as mixed frozen vegetables. Part of the mixed vegetables are shipped immediately on order after temporary cold storage, and part is kept in cold storage.

During their respective seasons both the corn and carrots, when received from the grower, go through a preliminary cleaning and sorting process. Both products are steam blanched before freezing. The carrots are diced prior to blanching whereas the corn is blanched on the cob.

After being frozen, as much as possible of both corn and carrots is placed in consumer size packages and put in cold storage. At the peak of the season, due to limited packaging facilities, only part of each day's products can be packaged at that time. The excess is put in large bulk containers and kept in cold storage. At the end of the peak season the products are re-sorted and re-packaged in consumer size packages.

The Government concedes that the freezing of potatoes by Ore-Ida Potato Co., is exempt under Section 207(b) (3).

The Government also concedes that the freezing of the corn and carrots and the placing into consumer size packages as part of the freezing process are exempt under Section 207(b) (3).

### Contentions

The Government contends, that:

1. The repackaging of the bulk frozen corn and carrots after the active season ends, the mixing of the frozen vegetable mix, and the storing of the frozen vegetables are not exempt under Section 207 (b) (3) or 207(c).

2. Section 213(a) (10) is completely inapplicable to the operation of Oregon Frozen Foods Co., and Ore-Ida Potato Products, Inc.

3. During work weeks when the office force, maintenance and refrigeration employees work indiscriminately for both defendants, they are exempt under Sections 207(b) (3) and 207(c) only if the operations of both defendants are exempt for that week.

4. During non-processing periods when the time of the maintenance, refrigeration and warehouse employees is prorated between each defendant, the

employees are jointly employed and their total hours worked for each defendant must be added together for overtime purposes.

Defendant contends they are exempt from the terms of the Fair Labor Standards Act because of the provisions of Section 213(a) (10) of the Act. Defendants also assert that if they are not entitled to that exemption then they are entitled to the partial exemption contained in Section 207(c).

## The Act

In 1938 Congress enacted what is commonly known as the Fair Labor Standards Act. This Act is also sometimes called the Federal Wage and Hour Law. In addition to limiting the hours of service of employees in interstate industries, the act also establishes a minimum wage for such employees. The overall statutory purpose was to establish a uniform national policy to all industries, and to fix wages on an industry wide basis. Many classes of employees are expressly exempted from the operation of the act.

The sections of the Act pertinent to this action are set forth in part as follows:

### Minimum Wages

Section 206(a) "Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates—

"(1) not less that $1 an hour; * * *."

### Maximum Hours

Section 207(a) "Except as otherwise provided in this section, no employer shall employ any of his employees who is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

"(b) No employer shall be deemed to have violated sub-section (a) of this section * * * if such employee is so employed * * *

"(3) for a period or periods of not more than fourteen workweeks in the aggregate in any calendar year in an industry found by the Administrator to be of a seasonal nature, * * *

"(c) * * * and in the case of an employer engaged in the first processing of, or in canning or packing, perishable or seasonal fresh fruits or vegetables, or in the first processing, within the area of production (as defined by the Administrator), of any agricultural or horticultural commodity during seasonal operations, * * * the provisions of subsection (a) of this section, during a period or periods of not more than fourteen workweeks in the aggregate in any calendar year, shall not apply to his employees in any place of employment where he is so engaged."

### Exceptions

Section 213(a) "The provisions of sections 206 and 207 of this title shall not apply with respect to * * * (10) any individual employed within the area of production (as defined by the Administrator), engaged in handling, packing, storing, ginning, compressing, pasteurizing, drying, preparing in their raw or natural state, or canning of agricultural or horticultural commodities for market, or in making cheese or butter or other dairy products; or * * *."

### Prohibited Acts

Section 215(a) " * * * it shall be unlawful * * *

"(1) to transport, offer for transportation, * * * goods in the production of which any employe was employed in violation of section 206 or section 207 of this title, or * * *

"(2) to violate any of the provisions of section 206 or section 207 of this title * * *."

Issues

Does the exemption provided in Section 213(a) (10) apply to defendants?

■ There are two points in sharp dispute on this issue.

1. The government contends that Section 13(a) (10) is inapplicable because the "area of production" requirement is not met.

2. The government also contends that blanching and freezing the commodities changes them from their raw and natural state and therefore the wording in the exemption "preparing in the raw or natural state" does not apply to defendant.

As to point one regarding "area of production", Section 213(a) (10) states:

" * * * any individual employed within the area of production (as defined by the Administrator), * * *."

In the Administrator's definition a plant is within the "area of production" if it is located;

(1) in the open country or in a rural community;

(2) within a specified mileage distance from the source of 95% of its commodities.

"Open country or rural community" is defined as not including "any city, town or urban place of 2,500 or greater population."

If the Administrator's definition is valid the exemption would not apply to defendant.

Defendant contends that the definition is arbitrary and capricious. It is obvious from the history of the act, subsequent decisions and the language in the most recent Supreme Court decision, Mitchell v. Budd, 350 U.S. 473, 76 S.Ct. 527, 531, decided March 26, 1956, that Congress intended to distinguish industrial areas from agricultural areas. Although it is clear to anyone familiar with the economy and geography of Oregon

that Ontario is in the heart of an agricultural center and is not an industrial community, nevertheless the fact remains that the Supreme Court has held in the Mitchell v. Budd case, that the definition is valid:

"No definition of 'area of production' could produce complete equality, for the variables are too numerous. The Administrator fulfills his role when he makes a reasoned definition. See Gray v. Powell, 314 U.S. 402, 411, 62 S.Ct. 326, 332, 86 L.Ed. 301. On no phase of this problem can we say that the Administrator proceeded capriciously or by the use of inadmissible standards. Experts might disagree over the desirability of one formula rather than another. It is enough for us that the expert stayed within the allowable limits. We think he did here and that the definition of 'area of production' under § 13(a) (10) is a valid one."

In view of this holding directly and without qualification on this point it would appear that there is no other alternative but to hold that the exemption is not available to defendants in that they have not met the "area of production" requirements of the act.

It is, therefore, not necessary to decide the second contention pertaining to the blanching and freezing.

Is the exemption provided in 207(c) applicable to defendant?

■ This section of the Fair Labor Standards Act provides for exemption from its provisions as to overtime pay for an employer engaged "in the first processing of, or in canning or packing, perishable or seasonal fresh fruits or vegetables".

The government contends that the repackaging of bulk frozen whole kernel corn, bulk frozen corn-on-the-cob and bulk frozen diced carrots and the mixing and packaging of mixed frozen vegetables is not exempt as "first processing."

Defendant's right to an exemption by this clause, therefore, rests upon the interpretation and application of the phrase "first processing" as used in Section 207(c). If the repackaging is a secondary process the defendants are violating the act and the injunction prayed for would lie.

There have been numerous cases involving this point. One of the earlier cases involving "first processing" under Section 207(c) was Hendricks v. Di Giorgio Fruit Corp., D.C., 49 F.Supp. 573, 575, decided April 7, 1943.

In that case defendant was maker of wine, brandy and grape concentrates. Plaintiff contended that only the crushing of the grapes and fermenting of the juice could be considered "first processing" operations; that distilling brandy and fortifying wine are secondary processing operations, or as "operations that are so closely associated thereto that they cannot be segregated for practical purposes." (Interpretive Bulletin No. 14)

The court explained the legislative history of the act, showing the intent of Congress to be to protect the farmer by allowing exemptions to industries that deal directly with the farmer. If the exemptions were not allowed a probable result would be lower prices to the farmer. Congress realized that perishable or seasonal fruits or vegetables must be processed when they reach the proper stage and that such stage depends upon natural factors which man cannot control.

The court said:

"If 'first processing' does not mean the processing that first results in a marketable product, where is the line to be drawn? It is true that the wine or brandy making process may be broken down into component processes or operations, and that these, in turn, may be broken down still further. But the same thing is true of any other process, as, for example, the production of dried and frozen fruits and vegetables, condensed, evaporated and dried milk, butter, cheese, dried eggs, and flour, all of which the administrator has held, fall within the exemption. Obviously, first processing does not end at some arbitrarily chosen point in the midst of the wine or brandy making process, any more than it ends at such a point in the cheese making process. The stipulated facts show that when the crushing season starts defendant's operations are a continuous processing of the fresh grapes that cannot be halted at any point prior to completion. To choose one of the early steps in such continuous process and say this and no more constitutes first processing would be arbitrary and unwarranted."

In McComb v. Hunt Foods, 9 Cir., 167 F.2d 905, the above case was reviewed along with other connected cases and was affirmed, Circuit Judge Denman dissenting.

In Walling v. California Conserving Co. Inc., D.C., 74 F.Supp. 182, 183, affirmed McComb v. Hunt Foods, 9 Cir., 167 F.2d 905, the Administrator sought to enjoin defendant from violating Sections 207(b) (3) and 207(c) of the Fair Labor Standards Act. Defendant purchased whole fresh apples of inferior grades and parts of fresh apples consisting of peelings and cores obtained from other operators who dry the pulp of the apple. ("An operation admittedly included in the first process"). The fresh fruit was deposited in a pit from which it was carried by conveyor belt to a grinder, thence squeezed for juice. The court (Judge James Alger Fee) said:

"If the plain words of the statute be taken, the defendant is not regulated thereby, at least in extracting the juice of the apples. Another result can be arrived at only by rationalization. The only basis for such rationalization is the beneficent purpose of the statute.

"Those who know the facts without the necessity of consulting books upon such subjects, realize the difference between seasonal operations

to save perishable orchard products and general manufacturing. The interminable conflict between rural and urban is here reflected. Modern manufacturing has developed a series of conditions upon which the Fair Labor Standards Act has been sustained. But the products of the soil wait for no man. These must be harvested and processed to a point where they may be preserved in short periods of time, without fail, or the farmer or grower will lose all the proceeds of a year of husbandry. If the primary processor, such as the defendant here, is compelled to keep a 40-hour week because the operation is otherwise rendered too expensive and as a result operates on that schedule, a proportion of the apple peelings and cores might become a total loss. Such loss would fall squarely upon the producer. \* \* \* Another obvious fallacy is the argument that peelings and cores of fresh apples are not 'perishable and seasonal fresh fruits' while the remainder of the fruit falls into that classification. \* \* \* The policy of protection to the growers of 'perishable and seasonable fresh fruits' is as much force as that of the protection of the general industrial workers. \* \* \* The hypertechnical reasoning concerning 'exceptions' and 'exemptions' has no place here."

It would seem that because some corn is put in large bulk containers until the end of the peak season and then resorted and repackaged in consumer size packages such delay would not constitute a new process. It would appear that "first processing" is completed when the products are packaged in consumer size packages even though delayed.[1] When they are so packaged there is a finished product for market and the first process is completed. To hold otherwise would be to place an arbitrary point of "first processing" and would be contrary to the spirit and intent of the act and subsequent interpretations by the courts. It would seem therefore that defendants are entitled to the exemption for overtime provisions as contained in 207(c).

If this is correct it is not necessary to decide whether or not the exemption in 207(b) (3) applies to defendant.

■ The law seems to be clear that if an employee performs both exempt and non-exempt work during the same work week he is not exempt. Fleming v. Swift & Co., D.C., 41 F.Supp. 825; Puerto Rico Tobacco Marketing Co-op. Ass'n v. McComb, 1 Cir., 181 F.2d 697.

■ During the non-processing periods when the time of the employees is pro-rated between each defendant, both defendants should be jointly liable for the payment of overtime based on the total hours worked per week for each defendant. It appears that this has been the uniform holdings of the courts on this matter. Mitchell v. Thompson Materials & Construction Co., 27 Labor Cases, Par. 68,888 CCH; Mid-Continent Pipe Line Co. v. Hargrave, 10 Cir., 129 F.2d 655.

---

1. 29 CFR Supp.Dec. 31, 1952, par. 780.51 (b) (1) and (b) (3) quoting from Release R–1892 Secretary of Labor and the Administrator of the Wage and Hour and Public Contracts Division:

(1) "An employer who commences processing operations on a perishable commodity to which the exemption in Section 7 (c) for first processing applies, is considered engaged in the first processing of the named commodity throughout each series of operations, including byproduct operations, which commence with such initial processing of the named commodi-ty and are performed in the same place of employment as a continuous series of operations during which the commodities remain perishable.

(3) " \* \* \* For example, where peas are shelled (vined) or green beans are trimmed and cut into pieces in one establishment, and the raw peas or beans sent to another establishment for freezing, the exemption can apply to the freezing operations in the second establishment as well as to the operations in the first establishment."

164

Counsel for the defendants is request-
ed to submit proposed Findings of Fact
and Conclusions of Law and Decree in
conformity with the foregoing.