**George P. SHULTZ, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**TWIN CITY FOODS, INC., a corporation, Defendant.**

**No. 8341.**

United States District Court, W. D. Washington, N. D.

June 1, 1970.

Altero D'Agostini, Regional Solicitor, Donald F. Rector, Trial Atty., United States Dept. of Labor, San Francisco, Cal., Stan Pitkin, U. S. Atty., Western District of Washington, Seattle, Wash., for plaintiff.

Bradley T. Jones, Davis, Wright, Todd, Riese & Jones, Seattle, Wash., for defendant.

BEEKS, District Judge.

This is an action brought by the Secretary of Labor to enjoin Twin City Foods, Inc. (Twin City) from continuing to claim entitlement to overtime exemptions under § 7(c)[1] and § 7(d)[2] of the

---

1. 29 U.S.C.A. § 207(c). For a period or periods of not more than ten workweeks in the aggregate in any calendar year, or fourteen workweeks in the aggregate in the case of an employer who does not qualify for the exemption in subsection (d) of

this section, any employer may employ any employee for a workweek in excess of that specified in subsection (a) of this section without paying the compensation

Fair Labor Standards Act for employees engaged in packaging vegetables previously frozen in bulk containers. Twin City will continue to claim said exemptions and will continue to fail to pay the premium compensation required by § 7(a) (1) [3] of the Act for overtime work by such employees unless enjoined from violating the Act by this Court. These exemptions are claimed only during the processing season, which is that period when perishable agricultural commodities are being received by Twin City for processing.

Twin City is a Washington corporation engaged in freezing fresh fruits and vegetables. It operates a freezing and packing plant at Ellensburg, Washington, where it freezes and packs corn, carrots, peas, and lima beans, and mixes and packs mixed frozen vegetables. The frozen vegetables are sold to more than 500 retailers and institutional buyers. Approximately 95 percent of the vegetables frozen and packed by defendant are shipped to customers outside the State of Washington.

All fresh vegetables received are initially blanched, cooled, and graded, after which they are conveyed by a moving belt through a freezing tunnel. Those portions of the resulting frozen pack which are to be initially packaged in ready-for-sale packages are then packaged and cased and the cases are moved to the cold storage warehouse. The balance of the frozen product is placed in bulk containers of 1,700 to 2,000-pound capacity. The bulk containers, or "totes," are then moved to the cold storage warehouse. The cold storage warehouse has a holding capacity of 25 million pounds.

Approximately 15 percent of the fresh vegetables processed are initially frozen in consumer size or other ready-for-sale packages. Approximately 85 percent of the fresh vegetables processed are initially frozen in bulk quantities and are subsequently taken out of cold storage and packed in consumer size or other ready-for-sale packages.

Each of the vegetables processed is subject to many variations which require separate packaging, separate labeling and separate case marking. Such differences relate, for instance, to color, size, variety, specific gravity, defects,

for overtime employment prescribed in such subsection if such employee (1) is employed by such employer in an industry found by the Secretary to be of a seasonal nature, and (2) receives compensation for employment by such employer in excess of ten hours in any workday, or for employment by such employer in excess of fifty hours in any workweek, as the case may be, at a rate not less than one and one-half times the regular rate at which he is employed.

2. 29 U.S.C.A. § 207(d). For a period or periods of not more than ten workweeks in the aggregate in any calendar year, or fourteen workweeks in the aggregate in the case of an employer who does not qualify for the exemption in subsection (c) of this section, any employer may employ any employee for a workweek in excess of that specified in subsection (a) of this section without paying the compensation for overtime employment prescribed in such subsection, if such employee—
   (1) is employed by such employer in an enterprise which is in an industry found by the Secretary— * * *

(B) to be of a seasonal nature and engaged in the handling, packing, storing, preparing, first processing, or canning of any perishable agricultural or horticultural commodities in their raw or natural state, and
(2) receives compensation for employment by such employer in excess of ten hours in any workday, or for employment in excess of forty-eight hours in any workweek, as the case may be, at a rate not less than one and one-half times the regular rate at which he is employed.

3. 29 U.S.C.A. § 207(a) (1). Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

foreign objects, maturity, all as relate to the finished frozen vegetable product. A particular frozen food product, e. g. corn, may have thirty or more variations of packaging requirements applicable for a single day's product receipts, depending upon, for instance, (a) combinations of package sizes ranging from eight ounces to 2½ pounds, (b) separate forms of buyer's labels from numerous buyers, (c) separate grade characteristics of the frozen product for sale purposes as required by the various buyers.

A single day's pack may involve as many as thirty or more separate variations of packaging and labeling requirements.

The design capacity of the freezing equipment is 32,000 pounds of product per hour. Two ten-hour shifts per day are a normal freezing operation during the processing season. During the processing season, the plant has frequently frozen between 450,000 pounds to 550,000 pounds of product in a day. The packaging space can accommodate two packaging lines into final package form and one discharge line of frozen product into bulk containers. Packaging lines which package into final package form cannot operate at a combined capacity as would be required to package the output of the freezing operation.

The packaging and labeling lines are run steadily, but, because of the product and packaging variations involved, cannot put the product into final package form as rapidly as the product is discharged from the freezing belts or tunnels.

Frozen vegetable products in bulk containers awaiting packaging and labeling, as employed in the industry and at defendant's plant, are not in a final salable form or condition. Sale and shipment of the frozen vegetable product requires that it be packaged, labeled and cased, all as required or specified for the particular type of pack and by the particular buyer.

The section 7(c) and the section 7(d) exemptions were claimed during the period the plant was receiving fresh produce for processing as to (1) all employees engaged in the blanching, sorting, grading, packing, and freezing of fresh vegetables in ready-for-sale packages or in bulk, and (2) those employees directly and primarily engaged in packing vegetables previously frozen and stored in bulk.

The packing procedures and requirements applicable to the plant in question are typical of industry practices in the processing of frozen vegetable products.

The question relating to packaging from bulk has been clearly decided under the Act as it stood prior to the 1966 amendments in Mitchell v. Oregon Frozen Foods Co., 145 F.Supp. 157 (D.Or., 1956).[4] Oregon Frozen Foods held that deferred packaging from bulk, even beyond the end of the processing season, was an activity eligible for the seasonal and first processing exemptions.

Pursuant to authority delegated by the Secretary of Labor, the Administrator of the Wage and Hour and Public Contracts Division made a finding on June 30, 1967[5] with regard to the scope and

---

4. Aff'd 254 F.2d 116 (9th Cir., 1958); petition for rehearing denied 264 F.2d 599 (9th Cir., 1958).

5. It is found (1) that the fresh fruit and vegetable industry, as defined herein, is an industry of a seasonal nature within the meaning of Sec. 7(c), and (2) that this industry is engaged in the handling, packing, storing, preparing, first processing, or canning of perishable agricultural commodities in their raw or natural state within the meaning of Sec. 7(d). For purposes of this finding, the fresh fruit and vegetable industry is defined to include only the handling, packing, storing, preparing, first processing, and canning of any fresh fruits and vegetables in their raw or natural state and any other operations and services necessary and incidental thereto. It includes such operations when performed in connection with fresh fruits and vegetables which have been merely refrigerated, but does not include operations performed in connection with fresh fruits and vegetables which

applicability of § 7(c) and § 7(d) exemptions to the fresh fruit and vegetable industry. Basically the Administrator found the vegetable industry eligible for the exemptions under § 7(c) and § 7(d), but not to include operations performed in connection with fresh vegetables which have been frozen, preserved, canned, dehydrated or otherwise changed so that they are no longer perishable or in their raw or natural state.

On October 20, 1967 the Administrator issued Opinion Letter No. 297 which stated in part as follows:

It is the Department's position that the packaging or further processing of fresh fruits and vegetables which have been frozen and stored in bulk for more than a short period would not be within the scope of the exemptions. However, a reasonable break between the freezing and packaging, such as 24 hours or less, would not be regarded as defeating the exemptions.

Thus the threshold question the Court must decide is whether the 1966 Legislative Amendments changed sections 7(c) and 7(d) in a manner that would justify the finding and opinion of the Administrator which is directly contrary to the holding in *Oregon Frozen Foods*. In this connection the facts in the present case have been stipulated and those deemed relevant are substantially identical with the facts found by the District Court in *Oregon Frozen Foods*.

■ After careful review of the statute as it now reads, together with its legislative history, and as it read in its prior form, the Court is of the opinion that the Administrator was in error when he ruled that the § 7(c) and § 7(d) exemptions did not apply to packaging of frozen vegetables, to the extent that such packaging is accomplished during periods when fresh commodities are being received and processed.

■ The § 7(c) exemption is given if an employee is employed by such employer in an industry found by the Secretary to be of a seasonal nature.

Nothing in the statute or its legislative history justifies the Administrator's reading into § 7(c) the additional requirement of § 7(d) relating to an industry engaged in the handling, packing, storing, first processing, or canning of any perishable agricultural or horticultural commodities in their raw or natural state. Section 7(c) must stand on its own and once it has been determined that the industry is of a seasonal nature, then the statute simply requires that the employee be employed in that industry.

The § 7(d) exemption is given if the employee is employed by an employer in an enterprise which is in an industry found by the Secretary to be of a seasonal nature and engaged in the handling, packing, storing, preparing, first processing, or canning of any perishable, agricultural or horticultural commodities in their raw or natural state. The Administrator hinges his finding and opinion on Senate Report No. 1487,[6] which

---

have been frozen, preserved, canned, dehydrated or otherwise changed so that they are no longer perishable or in their raw or natural state. The industry to which these findings apply may include transactions whereby, for purposes of filling a customer's order, fresh fruits and vegetables that have been packed or canned by employees of one employer are commingled with those packed or canned by the employees of the employer claiming these exemptions, provided that the amount of fill-in goods is 5 percent or less of the weekly volume of shipments made during each week in which the exemption is claimed. Finding of June 30, 1967;

See, 34 F.R. 18548 amending 29 C.F.R. 526.12.

6. The new section 7(d) provides for a 14-week overtime exemption for processing of perishable agricultural or horticultural commodities in their raw or natural state, compensation for hours worked in excess of 10 in any workday or 48 in any workweek must be at least 1½ times the regular rate of pay. The exemption is strictly limited by the requirement that it apply only when the agricultural or horticultural commodities being processed are perishable and in their raw or natural state. Perishable refers to commodities subject to deterioration or spoilage under ordinary

states that the exemption is strictly limited to apply only when the commodities being processed are perishable and in their raw or natural state, and that when an intervening operation such as freezing changes this condition in significant respects, the commodity is no longer in its raw or natural state.

The § 7(d) exemption states that the employee must be employed *in an enterprise* which is *in an industry*. The term enterprise has been broadly defined in § 3(r) [7] of the Act and does not limit the type of work the employee may do. It is factually clear and the Administrator has so found that this industry is of a seasonal nature and meets the other qualifications of § 7(d). The statute is couched in terms of industry activity, not that of the individual employee. Nowhere in the statute or its legislative history is a limitation put on the type of work done by the employee. It is the industry that must be found to be of a seasonal nature and the industry that must be engaged in the handling etc. of perishable agricultural commodities in their raw or natural state. Clearly this industry meets both § 7(d) requirements and the activities of the employees, during periods when fresh commodities are being received and processed, do not regulate entitlement to the exemption.

Senate Report No. 1487 is consistent with a finding of entitlement when read to mean that the exemption applies only during the time the industry is engaged in processing perishable commodities in their raw or natural state. The sentence thereof stating that when an inter-

vening operation such as freezing changes this condition, the commodity is no longer in its raw or natural state is also perfectly consistent. The Court reads it to mean that frozen items alone can't arguably be in their raw or natural state and thus entitle an exemption. For example, an industry receiving frozen agricultural products for the purpose of processing them into soup or catsup would not be entitled to the exemption, the freezing having been an intervening cause which changed the commodity from its raw or natural state. However, when the industry is engaged in § 7(d) activities, there is nothing in the statute or legislative history to indicate that the exemption is conditioned upon the type of service being performed by an employee.

It is clear that the Amendment adopted in 1966 was not for the purpose of changing the rule of *Oregon Frozen Foods*. Both parties agree that nowhere in the Congressional History, including the committee reports of both the House and the Senate, the joint conference committee of both houses [8] and all agency correspondence with respect to the legislation is *Oregon Frozen Foods* or its holding mentioned in any form. Senate Report No. 1487 [9] states that "In the case of agricultural or horticultural processing the present seasonal industry regulations and interpretations will be continued in effect." *Oregon Frozen Foods* represents a direct interpretation. Insofar as here relevant old § 7(b)(3) is identical to new § 7(c). The addition of the words "raw or natural state" in new § 7(d) changed nothing

circumstances unless some affirmative action is taken within a short time to preserve them from spoilage or decay. It should also be noted that the commodity must be in its raw or natural state; that is, in the form in which it is customarily harvested. When an intervening operation such as freezing changes this condition in significant respects, the commodity is no longer in its raw or natural state. If an employer qualifies for an exemption under both sections 7(c) and 7(d), each exemption is limited to 10 weeks, making

20 weeks the maximum aggregate period of exemption available to an employer under these sections. 2 U.S.Code Cong. & Ad. News, p. 3017 (1966).

7. 29 U.S.C.A. § 203(r).

8. This legislation went to a joint conference committee where differences in the House and Senate versions were compromised with the 1966 Amendment resulting.

9. 2 U.S.Code Cong. & Ad.News, p. 3017 (1966).

when related to an employer who claims the exemptions only during the initial processing period. Such words are not something new, designed and added to change the rule of *Oregon Frozen Foods,* in that they can be found in the Act prior to the 1966 Amendment.[10]

For the reasons aforesaid the Court is not persuaded that the rule of *Oregon Frozen Foods* was changed by the 1966 Amendment and concludes:

(1) That Twin City is an enterprise engaged in production of goods for commerce and has employees engaged in the production of goods for commerce within the meaning of the Act.

(2) That the Administrator's finding of June 30, 1967 and Opinion letter of October 20, 1967 were not reasonable and consistent with § 7(c) and § 7(d) of the Act insofar as it relates to packaging frozen vegetables during the processing season (when fresh commodities are being received and processed).[11]

(3) That while the 1966 Amendment makes important changes in the Act, it did not effect significant changes in former sections 7(b) (3) and 7(c) in the application of seasonal industry and first processing exemptions from the overtime pay requirements of the Act.

(4) That the later operations of Twin City, upon previously frozen vegetables, during its fresh produce receiving and processing season, qualify for § 7(c) and § 7(d) exemptions.

(5) The permanent injunction sought by plaintiff is denied.

This opinion shall constitute the Court's findings of fact and conclusions of law under F.R.Civ.P. Rule 52(a). Counsel for Twin City may prepare a decree in accordance herewith and submit the same within fifteen days of the date hereof, giving ten days notice to plaintiff.

10. 29 U.S.C. § 213(a) (10).

11. Furthermore, although not controlling here, it appears that the Administrator's action arbitrarily discriminates in favor

of a competing industry, in that the canning industry is allowed the exemption for labeling activities, even beyond the period of processing fresh vegetables.